SEAN MURPHY *vs.* DEPARTMENT OF CORRECTION & others.[1]

Middlesex. May 3, 1999. - June 18, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Deoxyribonucleic Acid. Statute,* Construction. *Injunction. Constitutional Law,*
Equal protection of laws, Privacy. *Search and Seizure,* Blood sample,
Expectation of privacy.

The plain language of St. 1997, c. 106, § 8, requiring certain incarcerated
persons to provide a DNA sample for inclusion in the State DNA database
created by G. L. c. 22E, was applicable to an individual who was incarcer-
ated on the effective date of the statute and who had previously been
convicted of an offense set out in G. L. c. 22E, § 3. [737-739]
This court construed the provisions of St. 1997, c. 106, § 8, which require
certain incarcerated persons to provide a DNA sample for inclusion in the
State DNA database, to be applicable to any person incarcerated on *or
after* the statute's effective date, to avoid any arbitrary unintended underin-
clusion of a category of persons the Legislature evidently wished to include.
[739-744]

CIVIL ACTION commenced in the Superior Court Department on
December 19, 1997.

The case was heard by *James F. McHugh, III,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Rosemary S. Gale,* Assistant Attorney General, for the
defendants.

*Lawrence M. Friedman (Joshua A. Engel* with him) for the
plaintiff.

FRIED, J. The plaintiff, who is currently incarcerated, brought
an action seeking a declaratory judgment that he is not required,
under St. 1997, c. 106, § 8, to submit a deoxyribonucleic acid
(DNA) sample for inclusion in the State DNA database created
by G. L. c. 22E. A judge in the Superior Court entered a declara-
tory judgment in favor of the plaintiff. The Commonwealth ap-

---

[1]Department of State Police and the Commonwealth. We refer to a single
defendant, the Commonwealth.

pealed. We transferred the case here on our own motion. We vacate the judgment and remand the case to the Superior Court for entry of a declaration that the statute by its terms applies to the plaintiff.

## I

Statute 1997, c. 106, codified at G. L. c. 22E, requires an individual convicted of any offense set out in G. L. c. 22E, § 3, to provide a DNA sample to be included in the State's DNA database. This statutory scheme was recently upheld in *Landry* v. *Attorney Gen., ante* 336 (1999). Section 8 of the statute, which was not codified, states that any person who has been convicted of a crime listed in G. L. c. 22E, § 3, "who is incarcerated . . . on the effective date of this act, notwithstanding the date of such conviction, shall submit a DNA sample to the department within 90 days of the effective date of this act or prior to release from custody, whichever first occurs."

The plaintiff was convicted in 1985 of armed robbery, an offense listed in § 3. He completed his sentence and was released in 1993. He was later convicted of another offense not listed in § 3 and remained incarcerated for that offense on the effective date of the statute. The Department of Correction informed the plaintiff that he would be required to submit a DNA sample because he had been previously convicted of a listed offense and was incarcerated on the statute's effective date. The plaintiff sought a judgment declaring that the statute did not require him to submit the sample, arguing that § 8 applied only to those who were incarcerated for a listed offense on the effective date.[2]

The judge, who did not have the benefit of our opinion in *Landry, supra,* and therefore perhaps gave greater weight to the privacy interests implicated here than did we, ruled in favor of the plaintiff, reasoning that reading the "literal terms" of the statute would "produce a number of results and distinctions with no apparent rational basis." The judge set out two scenarios, the juxtaposition of which he deemed to produce an irrational result. In the first, an individual convicted of a listed offense in the past, who "had led a blameless life since then but . . . found herself serving a one-week sentence for OUI on the act's effective date would be required to submit a sample." In the second hypothetical, although the person just described

---

[2]Both parties moved for judgment on the pleadings.

would be required to submit a sample, another individual previously convicted of a listed offense "who also received a one-week sentence to the house of correction on the OUI conviction but who did not begin serving that sentence until the day after the Act's effective date would not be required to submit a sample." Because the judge was "loath to attribute to the Legislature a statutory plan that is unsupported by any logical foundation," he eliminated what he judged to be the statute's irrationality by limiting the application of § 8 to those individuals incarcerated for a listed offense. As a result, he ruled that the plaintiff should not be required to submit a DNA sample under § 8.

## II

An unambiguous statute must be construed according to its plain language unless such a construction would produce an absurd result. See *Church of the Holy Trinity* v. *United States,* 143 U.S. 457, 460 (1892); *White* v. *Boston,* 428 Mass. 250, 253 (1998); *Martignetti* v. *Haigh-Farr, Inc.,* 425 Mass. 294, 308 (1997). The language of § 8 is clear; it requires any person ever convicted of a listed offense, who is incarcerated on the effective date of the statute, to provide a DNA sample. The section makes no distinction based on the offense for which the individual is currently incarcerated, and it therefore clearly applies regardless of the reason for the current incarceration. The plaintiff was convicted of a listed offense. He was incarcerated on the effective date of the statute. The statute, according to its plain terms, applies to the plaintiff.

The Superior Court judge thought it irrational that an individual who had been previously convicted of a listed offense, and subsequently imprisoned for a less serious offense on the effective date, be required to submit a sample. We do not share that view. The purposes of the statute, as set out in the statute itself, include "deterring and discovering crimes and recidivistic criminal activity," and "identifying individuals for, and excluding individuals from, criminal investigation or prosecution." St. 1997, c. 106, § 1. Moreover, the Legislature specifically found that "the collection and analysis of DNA samples is an integral part of the investigation and prosecution of criminal offenses." *Id.* at § 2. The Legislature has evidently determined that the statutory purpose is best served by collecting DNA samples from individuals convicted of the set of of-

fenses listed in G. L. c. 22E, § 3. It is entirely rational that, in pursuit of the statutory goal, the Legislature should provide for collection of DNA samples from as many of these individuals as possible. Further, it is not difficult to imagine why the Legislature would require samples to be collected from incarcerated individuals but not from those individuals who are not under the State's supervision; it is much less burdensome for law enforcement and correction officers to collect samples from individuals who are already in custody for whatever reason than it would be to send officers to track down and collect samples from every free individual who has ever been convicted of a listed offense. Moreover, it would be burdensome for persons not presently under the State's supervision to be required to take the affirmative step of presenting themselves to State authorities for the collection of a sample. Accordingly, we judge that a literal construction of § 8, requiring collection of DNA samples from persons convicted of unlisted offenses on the effective date, does not produce an irrational result.

## III

On appeal, the plaintiff argues that § 8 violates equal protection[3] by creating two classes: individuals "who were previously convicted of a listed offense under Mass. G. L. c. 22E, § 3, and incarcerated for any offense on December 29, 1997"; and those "who were previously convicted of a listed offense and were not incarcerated on December 29, 1997."

He asserts that the fundamental right to privacy is burdened by the statute, and thus that the statutory classification should be subjected to strict scrutiny. This court's recent decision in *Landry* v. *Attorney Gen., supra,* makes clear, however, that the taking of a blood sample from a convicted person for use in the DNA database does not burden a fundamental right. Convicted persons have a diminished expectation of privacy and, moreover, the "obtaining of a very small amount of blood by pin prick" is only a "minimally intrusive" procedure. *Id.* at 347.

Where, as here, the statute in question neither burdens a fundamental right nor targets a suspect class, the statute "will be upheld as long as it is rationally related to the furtherance of

---

[3]The standard of review for equal protection is identical under the State and Federal Constitutions. See *Dickerson* v. *Attorney Gen.,* 396 Mass. 740, 743 (1986).

a legitimate State interest." *English* v. *New England Medical Ctr., Inc.*, 405 Mass. 423, 428 (1989), cert. denied, 493 U.S. 1056 (1990), quoting *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 743 (1986).[4] "[L]egislative solutions must be respected if the 'distinctions drawn have some basis in practical experience' . . . or if some legitimate state interest is advanced . . ." (citations omitted). *Amado* v. *Superintendent, Mass. Correctional Inst. at Walpole*, 366 Mass. 45, 49 (1974), quoting *McGinnis* v. *Royster*, 410 U.S. 263, 276 (1973).

The plaintiff argues that, even if rational basis scrutiny is applied in this case, § 8 must be judged unconstitutional because it has no rational purpose. If the plaintiff's objection were merely that the Legislature has distinguished between individuals who are incarcerated and those who are not, it would fail because that distinction is made in the interests of practicality, administrative convenience, and lessening the burden on convicted persons, which are permissible and rational purposes under the equal protection clause. See, e.g., *Mathews* v. *Lucas*,

---

[4]The plaintiff argues that, because it is privacy that is at stake, even if the interest affected is not fundamental, the court should review the statute with some form of heightened scrutiny. He asserts that privacy is not the type of interest normally subjected to rational basis review and that submission of a DNA sample "represents no petty indignity" and permits the government to "conduct intimate inquiries." We decline to employ such a "rational basis plus" level of scrutiny. See *English* v. *New England Medical Ctr., Inc.*, 405 Mass. 423, 429 (1989), cert. denied, 493 U.S. 1056 (1990) (court specifically rejected request to create a standard stricter than rational basis in cases where there was no suspect class or fundamental interest at stake). *Plyler* v. *Doe*, 457 U.S. 202, 224 (1982), on which the plaintiff relies, does not support his argument. In *Plyler*, the Supreme Court considered whether the government could deny public education to children based on the fact that their parents had entered the country illegally. It noted the exceptional hardships that the denial of education would place on these children — the "stigma of illiteracy" and the denial of the "ability to live within the structure of our civic institutions" and of any "realistic possibility [of] contribut[ing] in even the smallest way to the progress of our Nation" — and stated that, in determining the rationality of the statute at issue, the court could "appropriately take into account its costs to the Nation and to the innocent children who are its victims. In light of these countervailing costs, the discrimination contained in [the statute] can hardly be considered rational unless it furthers some substantial goal of the State." *Id.* at 223-224. The hardship imposed by the statute in question here, however, is entirely different from the one that rendered the statute in *Plyler* irrational. As this court stated in *Landry* v. *Attorney Gen.*, *ante* 336 (1999), the intrusion is minimal, especially in light of the lowered privacy expectation of convicted persons. The proper level of scrutiny here is rational basis.

427 U.S. 495, 509-512 (1976). A literal interpretation of § 8, however, creates a further distinction among persons convicted of a listed offense and subsequently incarcerated for an unlisted offense. A literal reading of the statute would require that, within this group, only those incarcerated on the date of enactment must provide DNA samples. As the Superior Court's second hypothetical example pointed out, those convicted of an unlisted offense after the effective date, and even those convicted of an unlisted offense before enactment but not imprisoned until after the effective date, are not required to do so. Thus, it is argued, the statute violates equal protection because it is underinclusive and because this distinction has no rational basis.

The Legislature has wide discretion to create statutory classifications that do not burden a fundamental interest or discriminate against a suspect class. As long as the classification "rationally furthers some legitimate, articulated state purpose," it will not be overturned. *McGinnis* v. *Royster, supra* at 270 (upholding "good time" credit statute distinguishing between inmates who had been incarcerated prior to sentencing and those who had not). In the absence of evidence that the Legislature harbored an illegitimate motive or had no rational reason to draw the distinction as it did, the court must defer to the Legislature's classification. See *Clayborne* v. *Califano*, 603 F.2d 372, 379 (2d Cir. 1979).

This deference is required even where the lines of distinction seem imprecise or improvident and where it appears that, had the line been drawn differently, a more just outcome would have resulted. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge* v. *Williams*, 397 U.S. 471, 485 (1970), quoting *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78 (1911). See *Michael M.* v. *Superior Court*, 450 U.S. 464, 473 (1981); *Vance* v. *Bradley*, 440 U.S. 93, 96-97, 108 (1979); *Massachusetts Bd. of Retirement* v. *Murgia*, 427 U.S. 307, 312 (1976). "The problems of government are practical ones and may justify, if they do not require, rough accommodations — illogical, it may be, and unscientific." *McGinnis, supra* at 270, quoting *Metropolis Theatre Co.* v. *Chicago*, 228 U.S. 61, 69-70

(1913). Therefore, the Legislature is not required to tailor the classification precisely to further the State interest; in this respect, some amount of underinclusiveness or overinclusiveness is permissible. See *Vance, supra* at 108. Cf. *Railway Express Agency* v. *New York*, 336 U.S. 106, 110 (1949) ("It is no requirement of equal protection that all evils of the same genus be eradicated or none at all"); *Bryant* v. *Zimmerman*, 278 U.S. 63, 73 (1928) ("It is not enough to invalidate the law that others may do the same thing and go unpunished . . .").

There must, however, exist some conceivable basis for a statutory classification. It may not be arbitrary or capricious. See *McLaughlin* v. *Florida*, 379 U.S. 184, 190 (1964); *American Sugar Ref. Co.* v. *Louisiana*, 179 U.S. 89, 91-92 (1900). A court will not lightly arrive at the conclusion that a distinction made by the Legislature is arbitrary or irrational; the Legislature's judgment is "given the benefit of every conceivable circumstance which might suffice to characterize the classification as reasonable." *McLaughlin, supra* at 191. But in this case, the Commonwealth has not asserted, and this court is unable to conceive of, any rational purpose, whether permissible or invidious, that might be served by distinguishing between persons who were incarcerated on December 29, 1997, and those who were incarcerated after that date. The "distinctions that are drawn [must] have 'some relevance to the purpose for which the classification is made,' " *Estelle* v. *Dorrough*, 420 U.S. 534, 539 (1975), quoting *Rinaldi* v. *Yeager*, 384 U.S. 305, 309 (1966), but here the distinction that a literal reading of the statute seems to require serves neither the purpose of obtaining DNA samples from those whom the Legislature believes are likely to reoffend nor the goal of doing so in the manner least burdensome to law enforcement personnel. Those incarcerated after the effective date are no less likely to be recidivists than those incarcerated on the effective date, and the fact that they are within the State's custody makes obtaining their samples as easy for them and the authorities as obtaining samples from those incarcerated on the effective date.

It is clear, for the reasons stated, that this seemingly arbitrary classification presents a troubling question under the equal protection clause. We need not decide whether the statute violates equal protection, however, because it is clear that construing the statute in a literal manner would produce an absurd result. In order to avoid such an absurd result, and in

order to avoid a construction presenting a possible constitutional problem, we construe the statute so as to eliminate the arbitrary distinction pointed out by the Superior Court. See *Reno* v. *American-Arab Anti-Discrimination Comm.*, 119 S. Ct. 936 (1999); *Lambert* v. *Executive Director of the Judicial Nominating Council*, 425 Mass. 406, 410 (1997); *Martignetti* v. *Haigh-Farr, Inc.*, *supra* at 308; *1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*, 424 Mass. 661, 664-665 (1997).

The Superior Court judge chose a remedial construction that inserted a further distinction into the statute: that § 8 would apply only to those persons who were incarcerated for listed offenses. Under such a construction, the statute would not apply to the plaintiff. That construction has the defect of eliminating from the scope of the statute a category of persons the Legislature evidently wished to include and had good reason to include. Thus, such a reading frustrates rather than fulfils the Legislature's intention. Accordingly, we adopt the construction suggested by the Commonwealth, that § 8 be read to apply to anyone incarcerated on *or after* the statute's effective date. This construction presents a minimal deviation from the literal language of the statute and directly addresses the problem — that the statute's application is arbitrarily based on incarceration on a particular day.[5] Cf. *1010 Memorial Drive Tenants Corp.*, *supra.* Of course, had this been a criminal rather than a regulatory statute, we would hesitate a long time before so discerning and completing the Legislature's intent.

The Superior Court judge reasoned that this construction was supported by the language in § 8 concerning persons on parole or probation on the effective date.[6] Those individuals are required to provide DNA samples only if their status results

---

[5]Even if we were to decide that the statute violates the equal protection clause, this construction would be permissible. When a statute is judged to be unconstitutionally underinclusive, the court may either construe the statute to extend to the class not included or may declare the statute a nullity, see *Heckler* v. *Mathews*, 465 U.S. 728, 740 n.8 (1984); *Califano* v. *Westcott*, 443 U.S. 76, 89 (1979); *Orr* v. *Orr*, 440 U.S. 268, 272 (1979); see also *Wengler* v. *Druggists Mut. Ins. Co.*, 446 U.S. 142, 152-153 (1980), if to do so does not do violence to the Legislature's intent.

[6]The second sentence of § 8 states: "Any person currently on probation or parole as the result of a conviction or judicial determination resulting from a charge of any of the above listed offenses, notwithstanding of the date of such conviction or judicial determination, shall submit a DNA sample to the department within 90 days of the effective date of this act."

from the commission of a listed offense. That the Legislature chose to make a distinction between listed and unlisted offenses with respect to probationers and parolees does not require the court to construe the statute to make the same distinction with respect to incarcerated individuals. "[W]here the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present." *Beeler* v. *Downey*, 387 Mass. 609, 616 (1982). Moreover, the Legislature is permitted to "deal with problems 'one step at a time' . . . '[I]n confronting a multitude of evils, it may address itself to the phase of the problem most urgently requiring remedial action.' " *Opinion of the Justices*, 423 Mass. 1201, 1233 (1996), quoting *Commonwealth* v. *McQuaid*, 369 Mass. 925, 927 (1976). See *Dandridge* v. *Williams*, 397 U.S. 471, 487 (1970) (equal protection does not require the state to "choose between attacking every aspect of a problem or not attacking the problem at all"); *Semler* v. *Oregon State Bd. of Dental Examiners*, 294 U.S. 608, 610-611 (1935). The Legislature might reasonably have concluded that it would be easier to obtain DNA samples from incarcerated individuals than from those who had been released. It might also have concluded that persons still under supervision for a listed offense should not for that reason be treated differently from those who are incarcerated.[7] Thus, it was rational to require samples from all incarcerated individuals even though it required samples from probationers and parolees only if they were under supervision for a listed offense.

For these reasons, we construe St. 1997, c. 106, § 8, to apply to individuals incarcerated on *or after* December 29, 1997. The judgment is vacated. The case is remanded to the Superior Court for the entry of a declaration that St. 1997, c. 106, § 8, applies by its terms to the plaintiff.

*So ordered.*

---

[7] This scheme does create the anomaly that persons previously convicted of a listed offense and currently under supervision for an unlisted offense will not be required to produce DNA samples, whereas if incarcerated they would. This anomaly is not of a degree as to invoke equal protection concerns.