## COMMONWEALTH vs. JOHN T. McLEOD.

Hampshire. May 7, 2002. - July 5, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

. *Sex Offender. Practice, Civil,* Sex offender. *Statute,* Construction.

This court concluded that the provisions of G. L. c. 123A, § 12, as amended by St. 1999, c. 74, §§ 3-8, providing for the civil commitment of a "sexually dangerous person," did not apply to a previously convicted sex offender who, at the time of the filing of the commitment petition, was serving sentences for crimes other than the statutorily enumerated "sexual offenses." [289-294]

PETITION filed in the Superior Court Department on June 13, 2001.

A motion to dismiss was heard by *Mary-Lou Rup*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Steven Greenbaum*, Assistant District Attorney, for the Commonwealth.

*Nona E. Walker*, Committee for Public Counsel Services, for the defendant.

SPINA, J. A judge in the Superior Court dismissed a petition filed by the Commonwealth, pursuant to G. L. c. 123A, to commit the defendant to a secure facility as a sexually dangerous person. We granted the Commonwealth's application for direct appellate review. The sole issue on appeal is whether the provisions of G. L. c. 123A, § 12, apply to persons convicted of sexual offenses who have completed and been released from those sentences but who are later serving sentences for crimes that are not statutorily enumerated "sexual offenses." Because we conclude that the provisions of G. L. c. 123A, § 12, are not applicable in such circumstances, we affirm the judgment of the Superior Court.

1. *Background.* In July, 1988, the defendant was convicted of

rape and indecent assault and battery of a child, for which he received suspended sentences. In March, 1992, the defendant was convicted of aggravated rape and kidnapping for which he was sentenced to concurrent terms of from seven to ten years and from five to ten years, respectively, in a State prison. During his incarceration, the defendant was informed of and refused to attend a sex offender treatment program. The defendant completed these sentences and was released from incarceration prior to enactment of the 1999 amendments to G. L. c. 123A. See St. 1999, c. 74, §§ 3-8.

In early 2000, the defendant was convicted of assault, assault and battery, threatening to commit a crime, and possession of a class E substance. None of these offenses is among those enumerated in G. L. c. 123A, § 1, as "[s]exual [o]ffenses." The defendant was sentenced to a one-year term of probation, but it was revoked in May, 2001, and he was sentenced to concurrent terms of three months in a house of correction. On June 13, 2001, the Commonwealth filed a petition for the defendant's civil commitment[1] as a sexually dangerous person[2] and a motion for temporary commitment, pursuant to G. L. c. 123A, § 12.[3] Following a hearing, probable cause was found to believe

---

[1] The defendant was scheduled for release sometime between June 17 and June 22, 2001.

[2] Pursuant to G. L. c. 123A, § 1, a "[s]exually dangerous person" is defined as "any person who has been (i) convicted of or adjudicated as a delinquent juvenile or youthful offender by reason of a sexual offense and who suffers from a mental abnormality or personality disorder which makes the person likely to engage in sexual offenses if not confined to a secure facility; (ii) charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from a mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility; or (iii) previously adjudicated as such by a court of the commonwealth and whose misconduct in sexual matters indicates a general lack of power to control his sexual impulses, as evidenced by repetitive or compulsive sexual misconduct by either violence against any victim, or aggression against any victim under the age of 16 years, and who, as a result, is likely to attack or otherwise inflict injury on such victims because of his uncontrolled or uncontrollable desires."

[3] General Laws c. 123A, § 12, provides, in pertinent part:

"(*a*) Any agency with jurisdiction of a person who has been convicted of or adjudicated as a delinquent juvenile or a youthful offender by reason of a sexual offense as defined in section 1 or who has been charged with such of-

that the defendant was a sexually dangerous person; he was temporarily committed to a treatment center for examination and diagnosis pursuant to G. L. c. 123A, § 13 (*a*). Two qualified examiners both concluded that the defendant was a sexually dangerous person.[4] In August, 2001, the Commonwealth petitioned for a trial, pursuant to G. L. c. 123A, § 14 (*a*), and the defendant was ordered temporarily committed to a treatment

---

fense but has been found incompetent to stand trial shall notify in writing the district attorney of the county where the offense occurred and the attorney general six months prior to the release of such person, except that in the case of a person who is returned to prison for no more than six months as a result of a revocation of parole or who is committed for no more than six months, such notice shall be given as soon as practicable following such person's admission to prison. In such notice, the agency with jurisdiction shall also identify those prisoners or youths who have a particularly high likelihood of meeting the criteria for a sexually dangerous person.

"(*b*) When the district attorney or the attorney general determines that the prisoner or youth in the custody of the department of youth services is likely to be a sexually dangerous person as defined in section 1, the district attorney or the attorney general at the request of the district attorney may file a petition alleging that the prisoner or youth is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court where the prisoner or youth is committed or in the superior court of the county where the sexual offense occurred.

"(*c*) Upon the filing of a petition under this section, the court in which the petition was filed shall determine whether probable cause exists to believe that the person named in the petition is a sexually dangerous person. Such person shall be provided with notice of, and an opportunity to appear in person at, a hearing to contest probable cause.

" . . . .

"(*e*) If the person named in the petition is scheduled to be released from jail, house of correction, prison or a facility of the department of youth services at any time prior to the court's probable cause determination, the court, upon a sufficient showing based on the evidence before the court at that time, may temporarily commit such person to the treatment center pending disposition of the petition. The person named in the petition may move the court for relief from such temporary commitment at any time prior to the probable cause determination."

[4]Both qualified examiners stated in their reports that the defendant declined to be evaluated as to his status as a sexually dangerous person. Consequently, one of the examiners noted that no mental status evaluation was done because of the defendant's refusal to be interviewed. The opinions of both examiners were based on the defendant's prior history as evidenced through records of the treatment center and reports provided by the district attorney's office.

center, pursuant to G. L. c. 123A, § 14 (*e*),[5] pending disposition of the Commonwealth's commitment petition.

The defendant filed a motion to dismiss the Commonwealth's petition on the ground that G. L. c. 123A only applied to persons who were incarcerated for an enumerated sexual offense at the time the petition was filed. The Commonwealth filed a motion requesting that, in the event of dismissal, the defendant's release be stayed pending the Commonwealth's appeal. Following a hearing in the Superior Court, the defendant's motion to dismiss the commitment petition was allowed. The judge opined that the language of G. L. c. 123A, § 12, did not plainly and unambiguously provide that the Commonwealth could petition for the commitment of *any* incarcerated person with a past sexual offense conviction. Rather, examination of the statutory scheme suggested a legislative intent that petitions be brought only against incarcerated persons who were scheduled for release from sentences for enumerated sexual offenses, so as to treat those individuals who were *currently* sexually dangerous. Notwithstanding the dismissal of the commitment petition, the judge allowed the Commonwealth's motion to stay release pending appeal.

2. *Discussion.* The Commonwealth contends that the judge misinterpreted the plain language of G. L. c. 123A, § 12, when she concluded that this statutory provision does not apply to previously convicted sex offenders who, at the time of the filing of a commitment petition, are serving sentences for crimes other than sexual offenses. The Commonwealth argues that the language of § 12 is unambiguous and indicates that the statute applies to *any* incarcerated person who has *ever* been convicted of a sexual offense, regardless of the offense for which he is presently incarcerated. The absence of any language requiring that a defendant be in custody *by reason of* a conviction for a sexual offense demonstrates that the Legislature did not intend to include such a requirement. Therefore, the Commonwealth

[5]General Laws c. 123A, § 14 (*e*), provides as follows: "If the person named in the petition is scheduled to be released from jail, house of correction, prison or a facility of the department of youth services at any time prior to the final judgment, the court may temporarily commit such person to the treatment center pending disposition of the petition."

asserts, the provisions of G. L. c. 123A, § 12, apply to the defendant.

On September 10, 1999, the Legislature enacted emergency legislation, St. 1999, c. 74, §§ 3-8, amending G. L. c. 123A by providing for the one day to life commitment of a person adjudged a "sexually dangerous person."[6] See G. L. c. 123A, § 14 (*d*). Prior to these amendments, for a period of almost ten years, no new "sexually dangerous person" classifications and no new commitments were permitted. See St. 1990, c. 150, § 304 (repealing G. L. c. 123A, §§ 3-6, and 7). The 1999 amendments established a new definition of a sexually dangerous person, see G. L. c. 123A, § 1, and five new sections pertaining to the procedures for adjudicating persons as sexually dangerous, see G. L. c. 123A, §§ 12-16.

When interpreting these 1999 amendments, we are guided by fundamental principles of statutory construction. "[S]tatutory language should be given effect consistent with its plain meaning and in light of the aim of the Legislature unless to do so would achieve an illogical result." *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Where the language of a statute is inconclusive, courts must look to extrinsic sources for assistance in determining the correct interpretation of the statute, including legislative history, analogous statutory material, and relevant case law. See *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 854 (1983). Courts presume that the Legislature is aware of existing statutes when it amends a statute or enacts a new one. See *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001); *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994).

Pursuant to the commitment procedures set forth in G. L. c. 123A, § 12 (*a*), any "[a]gency with jurisdiction"[7] over a person convicted of a sexual offense as enumerated in G. L.

---

[6] Persons ordered committed pursuant to the provisions of G. L. c. 123A are confined to a treatment center, which is an institution established for their "care, custody, treatment and rehabilitation." G. L. c. 123A, § 2. It is to be maintained by the Commissioner of Correction, subject to the Department of Correction's jurisdiction. *Id.*

[7] General Laws c. 123A, § 1, defines an "[a]gency with jurisdiction" as "the agency with the authority to direct the release of a person presently incarcerated, confined or committed to the department of youth services including, but not limited to a sheriff, keeper, master or superintendent of a

c. 123A, § 1, must "notify in writing the district attorney of the county where the offense occurred and the attorney general six months prior to the release of such person." See *Commonwealth v. Bruno,* 432 Mass. 489, 495 (2000). "If the district attorney or Attorney General then 'determines that the prisoner . . . is likely to be a sexually dangerous person as defined in [§ ] 1 [of c. 123A],' either 'may file a petition alleging that the prisoner . . . is a sexually dangerous person and stating sufficient facts to support such allegation in the superior court.' " *Id.,* quoting G. L. c. 123A, § 12 (*b*). The thrust of the statutory scheme is that commitment petitions should be brought against persons currently incarcerated for sexual offenses who are about to be released into the community but who, because they are sexually dangerous, are likely to commit another sexual offense, and, therefore, should not be released. We are mindful that the stated purpose of G. L. c. 123A is "to protect forthwith the vulnerable members of our communities from sexual offenders." St. 1999, c. 74, emergency preamble.

In *Commonwealth* v. *Bruno, supra* at 491-492, this court considered, among other things, the retroactivity and constitutionality of the provisions of G. L. c. 123A, and we concluded that civil commitment proceedings were properly initiated against the defendants, notwithstanding the fact that their convictions of sexual offenses predated the effective date of the 1999 statutory amendments. Significantly, each of the defendants in that case, unlike the defendant herein, was serving his respective sentence on the sexual offense of which he had been convicted. We opined that "the conduct triggering the statute's application is not the prior conviction of a sexual offense, but the current mental condition of a defendant." *Id.* at 498. "That a person, in addition to possessing the requisite current mental condition, must have been convicted of a sexual offense, only identifies and limits the class of persons subject to potential commitment under c. 123A." *Id.* Although the requisite sexual offense conviction is not the *basis* for commitment (rather it is mental condition), it does determine the persons eligible, in the first instance, for potential civil commitment. See *id.*

jail, house of correction or prison, the director of a custodial facility in the department of youth services, the parole board and, where a person has been found incompetent to stand trial, a district attorney."

In the present case, the defendant was not serving a sentence for a sexual offense as defined in G. L. c. 123A, § 1. Because there is no underlying sexual offense conviction that would trigger the procedures set forth in c. 123A, the defendant is not eligible for potential civil commitment.[8] That the defendant was convicted of sexual offenses ten years ago does not change our analysis; he completed his sentences for those crimes prior to enactment of the 1999 revisions of G. L. c. 123A, and his present crimes are not enumerated sexual offenses. Were we to conclude otherwise, any defendant serving a sentence for any crime who had ever in the past committed an enumerated sexual offense, no matter how temporally distant, would be eligible for civil commitment, contingent on that defendant's current mental condition. General Laws c. 123A does not evidence such a broad legislative intent.[9]

We pointed out in *Commonwealth* v. *Bruno*, *supra* at 502, quoting *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977), that "[w]hile commitment proceedings under c. 123A are civil proceedings, the potential deprivation of liberty to those persons subjected to these proceedings 'mandates that due process protections apply.' " See *Sheridan, petitioner*, 422 Mass. 776, 777-778 (1996), and cases cited. Where a fundamental right is involved, here freedom from physical restraint, we "must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged [statute]." *Commonwealth* v. *Bruno*, *supra* at 503, quot-

---

[8]"Under prior versions of c. 123A, a sexually dangerous person would be committed concurrent with serving his sentence, St. 1985, c. 752, § 1, or could, in lieu of serving his sentence, be committed, St. 1958, c. 646, § 1." *Commonwealth* v. *Bruno*, 432 Mass. 489, 501 (2000). That being the case, there could be no commitment unless a defendant were serving a sentence for an enumerated sexual offense. Our interpretation of the current version of G. L. c. 123A, as amended in 1999, is in accordance with the commitment procedures under the prior version of the statute.

[9]We agree with the Superior Court judge that the language of G. L. c. 123A, § 12 (*a*), providing that an "agency with jurisdiction" of a person convicted of an enumerated sexual offense shall notify the district attorney of the county where the offense occurred (rather than the county where the defendant was then incarcerated) prior to such person's release, supports the conclusion that commitment petitions brought by the Commonwealth are strictly applicable to individuals who are currently incarcerated *for a sexual offense* and are scheduled for imminent release.

ing *Aime* v. *Commonwealth,* 414 Mass. 667, 673 (1993). "The loss of liberty that one faces even when temporarily committed is 'tantamount to the infringement of being arrested.' " *Commonwealth* v. *Bruno, supra* at 507, quoting *Glass* v. *Mayas,* 984 F.2d 55, 58 (2d Cir. 1993). The level of scrutiny with which this court will examine a statutory infringement on a fundamental right is much stricter and more exacting than the judicial review given to a statute that does not infringe on a fundamental right. See *Aime* v. *Commonwealth, supra; Commonwealth* v. *Henry's Drywall Co.,* 366 Mass. 539, 542 (1974). A State "may impose a regulatory restraint on [an] individual in narrowly-circumscribed situations." *Aime* v. *Commonwealth, supra* at 677-678. The Commonwealth's suggested construction of G. L. c. 123A does not narrowly limit the circumstances when civil commitment may be pursued.[10]

The Commonwealth analogizes the present case to *Murphy* v. *Department of Correction,* 429 Mass. 736 (1999), and this court's interpretation of the deoxyribonucleic acid (DNA) database statute, G. L. c. 22E. Section 8 of St. 1997, c. 106, which was not codified in G. L. c. 22E, provides that any person who has been convicted of a crime listed in G. L. c. 22E, § 3, "who is incarcerated . . . on the effective date of this act, *notwithstanding the date of such conviction,* shall submit a DNA sample to the department [of State police] within 90 days of the effective date of this act or prior to release from custody, whichever occurs first" (emphasis added). We concluded that the language of § 8 was clear and that it required any person ever convicted of a listed offense, who was incarcerated on or after the effective date of the statute, to provide a DNA sample for inclusion in the State database. *Murphy* v. *Department of Correction, supra* at 738. No distinction was made based on the offense for which such person was currently incarcerated; the statutory mandate was applicable irrespective of the reason for the current incarceration. *Id.*

Contrary to the Commonwealth's argument, the present case

---

[10]We do not decide whether a defendant may be committed under G. L. c. 123A after release from a sentence for a statutorily enumerated sexual offense but before release from a sentence for a nonenumerated offense that had been imposed either concurrently or consecutively.

is distinguishable from *Murphy* v. *Department of Correction, supra.* Unlike the clear and explicit language of St. 1997, c. 106, § 8, the language of G. L. c. 123A does not plainly and unambiguously provide that the Commonwealth can petition for the commitment of *any* incarcerated person with a past sexual offense conviction, notwithstanding the date of such conviction and the reason for the current incarceration. We will not add words to a statute that the Legislature did not put there, either by inadvertent omission or by design. See *General Elec. Co.* v. *Department of Envtl. Protection,* 429 Mass. 798, 803 (1999). See also *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.),* 427 Mass. 1, 8 (1998). Adoption of the Commonwealth's position would mean an enlargement of the scope of G. L. c. 123A such that the Commonwealth would be allowed to seek the civil commitment of persons completing any term of incarceration as long as, at some point in the past, they had been convicted of an enumerated sexual offense. The language of G. L. c. 123A does not support such an interpretation, and any broadening of the statute would be the province of the Legislature, not this court.[11]

*Judgment affirmed.*

---

[11]Significantly, we also pointed out in *Murphy* v. *Department of Correction,* 429 Mass. 736, 739 (1999), that the taking of a blood sample from an incarcerated individual for inclusion in the State DNA database did not burden a fundamental right and was only "minimally intrusive." Here, commitment proceedings for sexually dangerous persons pursuant to G. L. c. 123A clearly burden a fundamental right, namely a defendant's liberty interest. See *Foucha* v. *Louisiana,* 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action"); *Dutil, petitioner, ante* 9, 13 (2002). Moreover, civil commitment proceedings can in no way be construed as "minimally intrusive."