NOTICE:  All slip opinions and orders are subject to formal revision
and are superseded by the advance sheets and bound volumes of the
Official Reports.  If you find a typographical error or other formal
error, please notify the Reporter of Decisions, Supreme Judicial
Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston,
MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11727

JOSEPH W. DOKTOR  vs.  DOROTHY A. DOKTOR.


Berkshire.     October 6, 2014. - January 30, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Divorce and Separation, Alimony, Modification of judgment,
     Separation agreement.  Statute, Retroactive application.


Complaint for divorce filed in the Berkshire Division of the
Probate and Family Court Department on March 15, 1991.

A complaint for modification, filed on June 21, 2013, was heard
by Beth A. Crawford, J.

The Supreme Judicial Court granted an application for direct
appellate review.


Peter C. Alessio for the husband.
Janet H. Pumphrey for the wife.


DUFFLY, J.   Joseph W. Doktor and Dorothy A. Doktor were divorced

by a judgment nisi that entered in January, 1992, after a marriage

of over twenty years.[1]  The judgment incorporated a separation

_____

[1] Because they share a last name, we refer to Joseph W. Doktor
and Dorothy A. Doktor by their first names.

agreement that, among other things, obligated Joseph to pay alimony to Dorothy in the weekly amount of $200 until "the death or remarriage of the Wife." That provision merged with the judgment. In June, 2013, Joseph filed a complaint for modification in the Probate and Family Court, seeking termination of the alimony obligation under G. L. c. 208, § 49 (f), inserted by St. 2011, c. 124 (alimony reform act), which provides that "general term alimony orders shall terminate upon the payor attaining the full retirement age." He asserted that he had retired, and was past the normal age of full retirement as defined by the alimony reform act. See G. L. c. 208, § 48. Thereafter, he filed an amended complaint for modification, asserting as a further change in circumstances that his former wife was no longer in need of alimony. Following a trial, a Probate and Family Court judge dismissed the complaint for modification, concluding that G. L. c. 208, § 49 (f) (retirement provision), applies prospectively, and therefore that Joseph was required to, but had not, established that there had been a material change in circumstances warranting modification. Joseph appealed, and we granted his petition for direct appellate review.

This case again raises a question relative to retroactive application of the retirement provision of the alimony reform act to alimony agreements that merged with judgments of divorce entered prior to March 1, 2012, the effective date of the act. See Chin v.

Merriot, ante at    ; Rodman v. Rodman, ante at    .  Joseph argues

that the judge erred in concluding that only those general term

alimony orders that exceed the durational limits set forth in G. L.

c. 208, § 49 (b),[2] can be terminated pursuant to provisions of the

alimony reform act.  We have concluded that the Legislature intended

the retirement provision to have prospective application;

consequently, it is not applicable to modification of the alimony

judgment in this case.  Chin v. Merriot, supra.  As to Joseph's claim

that the evidence he presented supports modification of his

obligation to pay alimony based on a material change in

circumstances, we conclude that the judge did not abuse her

discretion in finding that the evidence failed to establish a change

in the parties' circumstances warranting termination of the alimony

obligation.

Background.  We draw our summary of the facts from the judge's

findings and the stipulations of the parties.  The parties were

married on September 20, 1968.  Joseph was trained as an electrical

---

[2] The alimony reform act, St. 2011, c. 124, sets limits on the period of time that alimony awards may continue, based on the length of the parties' marriage as defined by the act.  See G. L. c. 208, § 49 (b) (1)-(4).  Following a marriage of more than ten but less than fifteen years, for example, "general term alimony shall continue for not longer than [seventy] per cent of the number of months of the marriage."  G. L. c. 208, § 49 (b) (3).  Uncodified § 4 (b) of the alimony reform act states in part:  "Existing alimony awards which exceed the durational limits established in [G. L. c. 208, § 49,] shall be modified upon a complaint for modification."  St. 2011, c. 124, § 4 (b) (uncodified section).

engineer and worked for the majority of his career at a major electronics firm, until his retirement in 2001 at the age of fifty-seven.  Dorothy earned a degree in medical technology and last worked in that field in 1973.  During the marriage, Dorothy focused on raising the parties' two children, who are now adults, and managing the household.  Joseph was the primary wage earner.  The parties had been married for more than twenty years when they were divorced by a judgment of divorce nisi entered on January 10, 1992, which incorporated the parties' separation agreement.  A merged provision of that agreement provides that "the Husband shall . . . pay to the Wife the sum of $200 per week as alimony . . . . Payments . . . shall cease upon the death or remarriage of the Wife."

Following a trial on Joseph's complaint for modification, the judge concluded that the retirement provision does not operate retroactively, and thus that it does not apply in circumstances such as these, where the parties' divorce judgment predates the alimony reform act.  The judge also determined that Dorothy could not meet her expenses without alimony payments, and that Joseph had the ability to meet his alimony obligation.

Discussion. 1. Prospective application of the retirement provision.  Joseph challenges the judge's conclusion that § 4 of the uncodified provisions of the alimony reform act, St. 2011, c. 124, § 4 (uncodified section), sets forth the standard of review for

modification for alimony awards in judgments existing prior to March 1, 2012.[3] As we explained in Chin v. Merriot, ante at    , citing Murphy v. Department of Correction, 429 Mass. 736, 737-738 (1999), we "construe the language of the uncodified sections of the alimony reform act together with the codified sections, according to their plain meaning, unless the reliance on the literal words would produce an absurd result, or a result contrary to the Legislature's manifest intent."

The judge was correct in concluding that the Legislature distinguished between modifications of newly-enacted durational limits on alimony, defined in G. L. c. 208, § 49, and other modifications to the amount of alimony awarded. The alimony reform act provides that "existing alimony judgments that exceed the durational limits under [G. L. c. 208, § 49,] shall be modified upon

---

[3] Uncodified § 4 (b) of the alimony reform act provides:

"[General Laws c. 208, §§ 48-55,] shall not be deemed a material change of circumstance that warrants modification of the amount of existing alimony judgments; provided, however, that existing alimony judgments that exceed the durational limits under [G. L. c. 208, § 49,] shall be deemed a material change of circumstance that warrant modification.

"Existing alimony awards shall be deemed general term alimony. Existing alimony awards which exceed the durational limits established in [G. L. c. 208, § 49,] shall be modified upon a complaint for modification without additional material change of circumstance, unless the court finds that deviation from the durational limits is warranted."

a complaint for modification without additional material change of circumstance, unless the court finds that deviation from the durational limits is warranted."  Uncodified § 4 (b).  In all other respects, however, G. L. c. 208, §§ 48-55, "shall not be deemed a material change of circumstance that warrants modification of the amount of existing alimony judgments."  Uncodified § 4 (b).

Under common understanding of the phrase, the term "durational limits" refers to "the length of time something lasts."  Black's Law Dictionary 613 (10th ed. 2014).  The codified sections of the alimony reform act, discussing durational limits, clearly refer to the length of time that alimony is to be paid, and distinguish this period from the amount of alimony to be paid.[4]  Under the alimony reform act, the term "durational limits" does not include an event, such as death, remarriage, cohabitation, or reaching the age of retirement, that might trigger termination or reduction of alimony.  The language of uncodified § 4 (b) is consistent with the language of uncodified § 4 (a), which provides that G. L. c. 208, § 49,

> "shall apply prospectively, such that alimony judgments entered before March 1, 2012 shall terminate only under such judgments, under a subsequent modification or as otherwise

---

[4] Thus, G. L. c. 208, § 49 (b), sets forth limitations on the duration of alimony obligations based on the length of the parties' marriage.  General Laws c. 208, § 49 (b), by its terms, does not apply to a marriage of more than twenty years.  See id. ("if the length of the marriage is [twenty] years or less, general term alimony shall terminate no later than a date certain under the following durational limits").

provided for in this act."

As we explained in Rodman v. Rodman, ante at    , modification based on the newly-enacted durational limits in G. L. c. 208, § 49, affords the sole exception to prospective application, and it is apparent that this is what the Legislature was referencing in uncodified § 4 (a) when it allowed prospective application "as otherwise provided for in this act." Uncodified § 5 staggers the filing dates for complaints for modification asserting that an existing alimony judgment exceeds the durational limits of G. L. c. 208, § 49.[5]  There is a three and one-half year phase-in period

---

[5] Uncodified §§ 5 and 6 of the alimony reform act provide:

"SECTION 5.  Any complaint for modification filed by a payor under [§] 4 of this act solely because the existing alimony judgment exceeds the durational limits of [G. L. c. 208, § 49,] may only be filed under the following time limits:

"(1) Payors who were married to the alimony recipient [five] years or less, may file a modification action on or after March 1, 2013.

"(2) Payors who were married to the alimony recipient [ten] years or less, but more than [five] years, may file a modification action on or after March 1, 2014.

"(3) Payors who were married to the alimony recipient [fifteen] years or less, but more than [ten] years, may file a modification action on or after March 1, 2015.

"(4) Payors who were married to the alimony recipient [twenty] years or less, but more than [fifteen] years, may file a modification action on or after September 1, 2015.

"SECTION 6.  Notwithstanding clauses (1) to (4) of [§] 5 of this

for filing of such requests.[6]  However, uncodified § 6 provides an exception to that phase-in period.  Read together, uncodified §§ 5 and 6 establish that, where a payor who had been married to a recipient for fewer than twenty years seeks to modify an alimony obligation based on the durational limits of G. L. c. 208, § 49, and the payor also will "reach full retirement age on or before March 1, 2015," the payor may file a complaint for modification on or after March 1, 2013, "[n]otwithstanding clauses (1) to (4) of [§] 5"; accordingly, such a payor is not restricted to the phased filing dates provided in uncodified § 5.

Based on the foregoing, the judge did not err in dismissing the complaint for modification on the ground that G. L. c. 208, § 49 (f), is prospective, and therefore provides no basis for modifying the alimony judgment that entered more than twenty years prior to March 1, 2012.

2.  <u>Material change in circumstances</u>.  Joseph also challenges the judge's conclusion that the parties' circumstances do not warrant

---

act, any payor who has reached full retirement age, as defined in section [G. L. c. 208, § 48,] or who will reach full retirement age on or before March 1, 2015 may file a complaint for modification on or after March 1, 2013."

[6] According to the chairs of the alimony task force that drafted the proposed legislation act that eventually was adopted as the alimony reform act, this "phase in period" was intended to ease the additional burden on courts resulting from the sudden influx of cases.  See letter of December 28, 2010, from Chairs of the Alimony Task Force to Chairs of the Joint Committee on the Judiciary.

modification of the alimony judgment.  The judge properly "looked to the statute governing modification of divorce judgments that was in effect prior to the enactment of the alimony reform act, to inform her determination whether there had been a material change in the parties' circumstances."  Chin v. Merriot, ante at    , citing Pierce v. Pierce, 455 Mass. 286, 293 (2009).

Because the parties stipulated "that the Husband has the ability to pay the current alimony award," the judge made no findings concerning Joseph's income, expenses, or assets.  Indeed, nothing in the record reflects the amount of his income and expenses, or the net value of his assets.  Instead, in light of the stipulation, the judge's findings focus on whether Dorothy's circumstances since the divorce have changed so materially that she is no longer in need of alimony.  In determining whether Dorothy is no longer in need of alimony, the judge considered the parties' marital standard of living, as she was required to do.  "If a supporting spouse has the ability to pay, the recipient spouse's need for support is generally the amount needed to allow that spouse to maintain the lifestyle he or she enjoyed prior to termination of the marriage.  'The standard of need is measured by the "station" of the parties -- by what is required to maintain a standard of living comparable to the one enjoyed during the marriage.'"  Pierce v. Pierce, supra at 296, quoting Grubert v. Grubert, 20 Mass. App. Ct. 811, 819 (1985).

Joseph does not challenge the following findings of fact. During the marriage, Joseph was the primary wage earner; his gross weekly income was $1,428,66. Dorothy earned no significant income after the children were born. At the time of the divorce, her only income, other than child support, was one hundred dollars per week from dividends and interest. The marital home, which the parties built together using their own labor, was sold at the time of the divorce. The house, a four-bedroom, two and one-half bathroom colonial, is located on four and one-half acres of land. Joseph used the proceeds to pay off the mortgage on the house, in which he continues to live with his current wife; title to the house is now in her name.[7] Dorothy purchased "a modest house," which at the time of trial had equity in the amount of $109,000. During their marriage, Joseph and Dorothy traveled regularly; every year, they took an extensive vacation with their children, and Dorothy often accompanied Joseph on business trips. They drove expensive automobiles, went to concerts and dined out frequently, and Joseph often purchased jewelry for Dorothy.

Following the divorce, Dorothy worked as a limousine driver earning seventy-nine dollars per week. By the time of trial on the complaint for modification, she no longer drove for a company, but

---

[7] The record does not reflect the value of the house, its sale price, or the amount of equity each party received.

continued to drive for friends, earning between forty dollars and $46.15 per week. As additional sources of weekly income, she received $197 in Social Security benefits, $232.42 in dividends, and $144.26 from her share of Joseph's pension. The judge found Dorothy's adjusted weekly expenses of $634.49 to be "reasonable." The judge found also that Dorothy traveled occasionally, but that her travel was not as "lavish" as it had been during the marriage, and that she used discounts and coupons to meet her other expenses. Dorothy had received two assets as part of an equal division of marital assets when the parties divorced. They had a combined value of $690,231 at the time of trial on the complaint for modification.[8] The judge found that Dorothy "is not able to meet her current reasonable expenses from income without alimony, unless she invades her assets."

Joseph argues that the judge erred in not considering Dorothy's ability to use the principal of her assets to meet her reasonable expenses. "In determining whether to modify a support or alimony order, a . . . judge must weigh all relevant circumstances"; "[r]esolution of the issue rests in the judge's sound discretion."

---

[8] One of these assets was an investment account valued at $375,839 that generated dividend income in the amount of $232.42 per week, and the other was an individual retirement account valued at $314,392. The judge found that Dorothy also had, at some point, acquired an additional individual retirement account valued at $30,361; the evidence does not reflect the date on which this asset was acquired.

Schuler v. Schuler, 382 Mass. 366, 370 (1981).  On this record, the judge appears to have "weigh[ed] all relevant circumstances," id., and to have reached her determination based on the evidence presented.  She properly considered the parties' station in life during the marriage; the nature, source, and value of Dorothy's assets; her current income and reasonable expenses; and Joseph's stipulated ability to continue to pay alimony in the amount of $200 per week.  On these facts, the "judge properly could conclude that the wife should not be required to deplete her assets in order to maintain herself."  Downey v. Downey, 55 Mass. App. Ct. 812, 818 (2002).

Judgment affirmed.