NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11715

CHESTER CHIN  vs.  EDITH E. MERRIOT.[1]


Franklin.     October 6, 2014. - January 30, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.


Divorce and Separation, Alimony, Modification of judgment, Separation agreement.  Statute, Retroactive application.


Complaint for divorce filed in the Franklin Division of the Probate and Family Court Department on January 11, 2011.

A complaint for modification, filed on March 11, 2013, was heard by Beth A. Crawford, J.

The Supreme Judicial Court granted an application for direct appellate review.


William Sanford Durland, III, for Chester Chin.
Leslie H. Powers for Edith E. Merriot.
The following submitted briefs amicus curiae:
Rachel B. Biscardi for Women's Bar Association of Massachusetts.
Richard M. Novitch, Maureen McBrien, & Charles P. Kindregan, pro se.
David H. Lee & Holly A. Hinte, pro se.


DUFFLY, J.  After twelve years of marriage, Chester Chin and

_____

[1] Formerly known as Edith E. Chin.

Edith E. Merriot were divorced by a judgment of divorce nisi in August, 2011. At the time of the divorce, Chin was sixty-seven years old and Merriot was sixty-nine. Pursuant to a merged provision of the parties' separation agreement, Chin was obligated to pay alimony to Merriot in the amount of $650 per month until "the death of either party or the wife's remarriage."

In March, 2013, Chin filed an amended complaint for modification in the Probate and Family Court in which he sought to terminate his alimony obligation. To support his claim for relief, Chin asserted as "changed circumstances" that he had attained the age of sixty-eight, "full retirement age" as defined by G. L. c. 208, § 48. He argued that, pursuant to G. L. c. 208, § 49 (f) (retirement provision), "general term alimony orders shall terminate upon the payor attaining the full retirement age." Chin thereafter filed an amended complaint asserting, as a further change in circumstances, that Merriot had "been cohabiting with another person . . . and maintaining a common household" for more than three months; cohabitation alone is a basis for termination of alimony under G. L. c. 208, § 49 (d) (cohabitation provision).

The retirement and cohabitation provisions on which Chin relies were enacted as part of the Alimony Reform Act of 2011, St. 2011, c. 124 (alimony reform act or act). The act was made effective as of March 1, 2012, more than seven months after entry of the parties'

judgment of divorce nisi.  Following a trial on the complaint for modification, a Probate and Family Court judge concluded that neither provision applied retroactively to divorce judgments ordering general term alimony that were in existence prior to the effective date of the alimony reform act.  Applying the change of circumstances standard in effect before March 1, 2012, the judge determined that Chin had not shown a material change of circumstances warranting modification of the alimony order,[2] and dismissed the complaint. Chin appealed from the judgment of dismissal,[3] and we allowed his petition for direct appellate review.

The question we confront in this case is whether modification of an obligation to pay periodic or general term alimony that is contained in a merged provision of a divorce judgment is governed by the alimony reform act, where the act became effective after the date of entry of the judgment.[4]  We conclude that, with respect to

[2] Chin does not challenge the judge's conclusion that he did not show a material change in the parties' circumstances, the applicable standard prior to enactment of the Alimony Reform Act of 2011, St. 2011, c. 124 (alimony reform act).

[3] The complaint sought also to terminate Chin's obligation to maintain life insurance for the benefit of Edith E. Merriot.  The judge denied the request; that denial is not part of Chin's appeal.

[4] Because both the judgment nisi and the judgment absolute predate the effective date of the alimony reform act, we need not decide whether language in the act that its provisions "apply prospectively" to "alimony judgments" refers to judgments nisi or to absolute judgments.

the alimony obligation at issue here, both the retirement provision and the cohabitation provision apply prospectively, and therefore afford no basis upon which to terminate the alimony order. That the Legislature intended these provisions to apply prospectively is reflected in the language of several uncodified provisions of the alimony reform act, which we consider together with the codified provisions at issue here. Therefore, we affirm the judgment of dismissal.[5]

1. Background. We summarize the judge's findings of fact, adding certain uncontested facts from the record. Chin and Merriot were married in Massachusetts on November 28, 1998. Both had been married previously; Chin has two children from his prior marriage, and Merriot has four children from hers. The parties' marriage produced no children. During their marriage, Chin had been a teacher and Merriot a paraprofessional and substitute teacher. By the time of the divorce, each had retired.

The parties last lived together in January, 2011. On August 17, 2011, they entered into a separation agreement allocating their real and personal property. Article VI of that agreement provided that Chin "shall pay to the Wife alimony in the monthly amount of six hundred and fifty ($650) dollars . . . . The Husband's alimony

---

[5] We acknowledge the amicus briefs of the Women's Bar Association of Massachusetts; Richard M. Novitch, Maureen McBrien, and Charles P. Kindregan; and David H. Lee and Holly A. Hinte.

obligation shall terminate upon the death of either party or the Wife's remarriage." Under the terms of the separation agreement, "Article VI . . . shall be merged and incorporated into the divorce judgment and shall not retain independent legal significance."[6]

A judgment of divorce nisi entered on August 17, 2011.[7] The judgment reflects that the judge found the parties' agreement to be "fair, equitable and reasonable, voluntarily entered into and not the product of coercion or duress." The judgment provides also that the agreement "shall survive and remain as an independent contract between the parties, except with respect to Article VI, which is incorporated and merged herein." When the divorce judgment nisi entered, Chin was sixty-seven years old.

One year after the effective date of the alimony reform act,

---

[6] The agreement also allocated responsibility for outstanding debt, made provision for medical insurance and uninsured dental and medical costs, and contained general representations that the parties had made full financial disclosure to each other; stated that they had entered into the agreement freely, voluntarily, and fully apprised of their rights; and stated that they believed the agreement to be "fair, adequate and reasonable . . . commensurate with [their] needs, income, and financial worth, and their previous standard of living and with full consideration of . . . all factors" set forth in G. L. c. 208, § 34.

[7] The judgment of divorce nisi was amended due to a scrivener's error. The amended judgment was entered on the Probate and Family Court docket on August 26, 2011, dated nunc pro tunc to August 17, 2011. A judgment of divorce becomes absolute ninety days after the entry of a judgment nisi. See G. L. c. 208, § 21. It is unclear from the record why the judgment absolute in this case entered on January 19, 2012.

Chin filed a complaint for modification asserting that he had reached "full retirement age" according to the act, and seeking termination of his obligation to pay alimony. Merriot denied that there had been a material change in circumstances because, at the time the divorce judgment entered, her former husband already had passed "full retirement age." Chin thereafter amended his complaint to include as an additional ground for modification that Merriot had been cohabiting with another person since November 19, 2012.

Following a trial on the complaint for modification, the judge found that Chin had remarried in 2012, and, at the time of trial, Chin, his new wife, and her sixteen year old son were residing together. Chin was the primary source of support for his new wife and stepson, and his wife contributed some income from child support and part-time employment. Merriot "moved in with her significant other" in September, 2012, and, by the time of trial, he and Merriot were "in a committed relationship and . . . [were] economically interdependent"; they had "continuously maintained a common household for more than three months."

The judge concluded that modification of the alimony order was not governed by either the retirement provision or the cohabitation provision, because uncodified § 4 of the alimony reform act provides that G. L. c. 208, § 49, applies prospectively to alimony judgments entered on or after March 1, 2012. St. 2011, c. 124, § 4 (uncodified

section).  The judge therefore looked to the statute governing modification of divorce judgments that was in effect prior to enactment of the alimony reform act to inform her determination whether there had been a material change in the parties' circumstances warranting modification of the amount of alimony.  See Pierce v. Pierce, 455 Mass. 286, 293 (2009), quoting Schuler v. Schuler, 382 Mass. 366, 368 (1981).  The judge concluded that Chin had not established a material change in circumstances and dismissed the amended complaint.

2.  Discussion.  Under the alimony reform act, the periodic payment of support to an economically dependent spouse falls within the definition of "general term alimony."  G. L. c. 208, § 48.  See Holmes v. Holmes, 467 Mass. 653, 656 (2014) (prior alimony statute "recognized only one category of postjudgment alimony, which the [alimony] reform act now classifies as 'general term alimony'").  Chin contends that, under the retirement provision, his obligation to pay alimony must be terminated because, "[o]nce issued, general term alimony orders shall terminate upon the payor attaining the full retirement age."  See G. L. c. 208, § 49 (f).  Chin also maintains that he is entitled to termination of the alimony order under the cohabitation provision, which provides:

> "General term alimony shall be suspended, reduced, or terminated upon the cohabitation of the recipient spouse when the payor shows that the recipient spouse has maintained a

common household, as defined in this subsection, with another person for a continuous period of at least [three] months."

G. L. c. 208, § 49 (d).  Chin's argument effectively disregards the uncodified provisions of the alimony reform act, contained in St. 2011, c. 124 §§ 4-6 (uncodified sections).  These provisions reflect the Legislature's intent that the act apply prospectively except as to "durational limits," which are based on the length of the parties' marriage, and the clear indication that neither retirement nor cohabitation constitute durational limits.[8]

a.  Standard of review.  We review questions of statutory interpretation de novo.  Sheehan v. Weaver, 467 Mass. 734, 737 (2014).  Under well-established principles of statutory construction, "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."  Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013), quoting Harvard Crimson, Inc.

---

[8] The term "durational limits" is not defined in the uncodified sections of the alimony reform act, St. 2011, c. 124, §§ 4-6 (uncodified sections).  However, the term is also used in G. L. c. 208, § 49 (b), inserted by St. 2011, c. 124, § 3.  We interpret "durational limits" as it appears in the uncodified sections as referring specifically and solely to the provisions of G. L. c. 208, § 49 (b).

v. <u>President & Fellows of Harvard College</u>, 445 Mass. 745, 749 (2006). Although we look first to the plain language of the provision at issue to ascertain the intent of the Legislature, we consider also other sections of the statute, and examine the pertinent language in the context of the entire statute. "Significantly, a statute must be interpreted 'as a whole'; it is improper to confine interpretation to the single section to be construed." <u>Johnson</u> v. <u>Kindred Healthcare, Inc</u>., 466 Mass. 779, 784 (2014), quoting <u>Commonwealth</u> v. <u>Keefner</u>, 461 Mass. 507, 511 (2012). Cf. <u>Abramski</u> v. <u>United States</u>, 134 S. Ct. 2259, 2267 (2014), quoting <u>Maracich</u> v. <u>Spears</u>, 133 S. Ct. 2191, 2209 (2013) ("we must [as usual] interpret the relevant words not in a vacuum, but with reference to the statutory context, 'structure, history and purpose'").

The same standards of construction are applicable to both codified and uncodified provisions of the general laws. We therefore construe the language of the uncodified sections of the alimony reform act together with the codified sections, according to their plain meaning, unless reliance on the literal words would produce an absurd result, or a result contrary to the Legislature's manifest intent. See <u>Murphy</u> v. <u>Department of Correction</u>, 429 Mass. 736, 737-738 (1999), and cases cited.

Sections 4 through 6 of the uncodified provisions of the alimony reform act provide essential context. As a general matter,

uncodified provisions of an act express the Legislature's view on some aspect of its operation; they are not the source of the substantive provisions of the law. Uncodified provisions may, for example, address when the legislation will take effect, state if it will have retroactive effect, and provide mechanisms for handling special situations during the transition period between the date of enactment and the effective date of the new statute. See, e.g., Murphy v. Department of Correction, supra at 737 (uncodified provision stating act's effective date and that act will apply retroactively); Commissioner of Banks v. Chase Sec. Corp., 298 Mass. 285, 309 (1937) (uncodified provision precluding application of act to agreements existing prior to act's effective date which were valid under earlier statute); Commonwealth v. Abrahams, 85 Mass. App. Ct. 150, 153-154 (2014) (uncodified provision "imposes early deadline for submission of" biological samples). Uncodified provisions also may include severability clauses, savings clauses, and statements concerning the fiscal consequences of legislation. See, e.g., Franchise Tax Bd. v. Superior Court, 221 Cal. App. 4th 647, 661-662 (2013).

Here, uncodified § 7 of St. 2011, c. 124, sets March 1, 2012, as the effective date of the alimony reform act; uncodified §§ 4 through 6 describe whether, to what extent, and when, the act will

be applied to alimony judgments in existence prior to that date.[9]

---

[9] "SECTION 4.  (a) [General Laws c. 208, § 49,] shall apply prospectively, such that alimony judgments entered before March 1, 2012 shall terminate only under such judgments, under a subsequent modification or as otherwise provided for in this act.

"(b) [G. L. c. 208, §§ 48-55], inclusive, . . . shall not be deemed a material change of circumstance that warrants modification of the amount of existing alimony judgments; provided, however, that existing alimony judgments that exceed the durational limits under [G. L. c. 208, § 49,] shall be deemed a material change of circumstance that warrant modification.

"Existing alimony awards shall be deemed general term alimony. Existing alimony awards which exceed the durational limits established in [G. L. c. 208, § 49,] shall be modified upon a complaint for modification without additional material change of circumstance, unless the court finds that deviation from the durational limits is warranted.

"(c) Under no circumstances shall [G. L. c. 208, §§ 48-55], inclusive, . . . provide a right to seek or receive modification of an existing alimony judgment in which the parties have agreed that their alimony judgment is not modifiable, or in which the parties have expressed their intention that their agreed alimony provisions survive the judgment and therefore are not modifiable.

"SECTION 5.  Any complaint for modification filed by a payor under [§] 4 of this act solely because the existing alimony judgment exceeds the durational limits of [G. L. c. 208, § 49,] may only be filed under the following time limits:

"(1) Payors who were married to the alimony recipient [five] years or less, may file a modification action on or after March 1, 2013.

"(2) Payors who were married to the alimony recipient [ten] years or less, but more than [five] years, may file a modification action on or after March 1, 2014.

"(3) Payors who were married to the alimony recipient [fifteen] years or less, but more than [ten] years, may file a modification action on or after March 1, 2015.

   b.  Prospective application of retirement and cohabitation

provisions.  Of particular import here is uncodified § 4 (a), which

states that G. L. c. 208, § 49, "shall apply prospectively, such that

alimony judgments entered before March 1, 2012 shall terminate only

under such judgments, under a subsequent modification or as otherwise

provided for in this act."  This sentence sets out three separate

circumstances under which alimony included in a judgment that

predated the effective date of the alimony reform act will be

terminated.  Chin appears to read the sentence as meaning that,

because the alimony reform act expressly provides for termination

of alimony on retirement or cohabitation by the recipient spouse,

he currently is entitled to terminate his alimony obligation.  We

disagree.  To explain our reasoning, it is useful to review each of

the circumstances allowing termination that are set out in uncodified

§ 4 (a).

   (i)  Termination "under such judgments".  The first clause of

uncodified § 4 (a) provides that alimony judgments entered before

---

   "(4) Payors who were married to the alimony recipient [twenty]
years or less, but more than [fifteen] years, may file a modification
action on or after September 1, 2015.

   "SECTION 6.  Notwithstanding clauses (1) to (4) of [§] 5 of this
act, any payor who has reached full retirement age, as defined in
[G. L. c. 208, § 48,] or who will reach full retirement age on or
before March 1, 2015 may file a complaint for modification on or after
March 1, 2013."

March 1, 2012, may terminate "only under such judgments."  We interpret this to mean that alimony judgments entered into before the effective date of the alimony reform act may be terminated only in accordance with provisions governing termination that are contained within the existing judgment, either by a judge following a trial or by the parties through a negotiated agreement incorporated in the judgment.  Orders for payment of alimony in judgments issued based on evidence in a contested divorce generally will be subject to modification on a showing of a material change in circumstances.[10] See Schuler v. Schuler, 382 Mass. 366, 368 (1981); G. L. c. 208, § 37.[11]

---

[10] The change in circumstances standard by which alimony may be modified was established through decisional law.  See, e.g., Schuler v. Schuler, 382 Mass. 366, 368 (1981), citing Robbins v. Robbins, 343 Mass. 247, 249 (1961), and Hinds v. Hinds, 329 Mass. 190, 191-192 (1952); O'Brien v. O'Brien, 325 Mass. 573, 576 (1950); Whitney v. Whitney  325 Mass. 28, 31-32 (1949).  Under that standard, "[w]hile alimony is modifiable on the showing of a material change in circumstances, . . . property settlements are not."  Heins v. Ledis, 422 Mass. 477, 483 (1996).

[11] The first paragraph of G. L. c. 208, § 37, provides:

"After a judgment for alimony or an annual allowance . . . for the spouse . . . , the court may, from time to time, upon the action for modification of either party, revise and alter its judgment relative to the amount of such alimony or annual allowance and the payment thereof, and may make any judgment relative thereto which it might have made in the original action."

This paragraph has been in effect, employing substantially the same language, since at least 1860.  See Graves v. Graves, 108 Mass. 314, 317-318 (1871) (court may "from time to time, on the petition of either party, revise and alter any decree respecting the amount of

When parties to a divorce negotiate an agreement for alimony that is "incorporated and merged into [such a] judgment" upon approval by a judge and in accordance with G. L. c. 208, § 1A or 1B, the judgment also is subject to modification based on a material change in circumstances.[12]  Even where provisions regarding alimony in a separation agreement are merged and do not survive the divorce judgment, "it is nevertheless appropriate for a judge to take heed of the parties' own attempts to negotiate terms mutually acceptable to them" when determining whether to modify or terminate alimony. Pierce v. Pierce, 455 Mass. 286, 302 (2009), quoting Bercume v. Bercume, 428 Mass. 635, 644 (1999).

Thus, an order for alimony in a divorce judgment that entered prior to March 1, 2012, includes, as part of its terms, the standards for modification existing at the time the judgment entered, unless the parties explicitly agreed otherwise, or the alimony reform act itself unequivocally provides a specific exception that a provision governing modification is to have retroactive effect.  See Hay v. Cloutier, 389 Mass. 248, 253 (1983), quoting Hanscom v. Malden &

---

such alimony or . . . the payment thereof, . . . and may make any decree respecting the same which it might have made in the original suit"); Gen. Stats. c. 107, § 47 (1860).

[12] To modify an agreement that survives the judgment, "something more than a 'material change of circumstances' must be shown." Stansel v. Stansel, 385 Mass. 510, 515 (1982).

<u>Melrose Gas Light Co</u>., 220 Mass. 1, 3 (1914).[13]

(ii) Termination <u>"under a subsequent modification"</u>.  The
second clause of uncodified § 4 (<u>a</u>) provides that alimony judgments
that entered prior to March 1, 2012, may be terminated "only . . .
under a subsequent modification."  We interpret "words in a
statute . . . in light of the other words surrounding them."
<u>Commonwealth</u> v. <u>Magnus M</u>., 461 Mass. 459, 462 (2012), quoting
<u>Commonwealth</u> v. <u>Brooks</u>, 366 Mass. 423, 428 (1974).  The placement
of the phrase "under such judgments," immediately preceding the
phrase "under a subsequent modification," indicates that the
Legislature intended the latter to refer to the former, and that the
language of the alimony reform act must be read to state that alimony
judgments entered prior to March 1, 2012, may terminate only under
a "subsequent modification" of such judgments.  In other words, such
alimony judgments, as well as subsequent modifications of such
judgments, may be modified only under the terms and standards of
modification existing at the time the judgment entered.

The mere filing of a complaint after March 1, 2012, seeking
modification of an alimony judgment that entered prior to that date,
based on the retirement or cohabitation provisions, cannot be what

---

[13] The issue of alimony was not before the court in <u>Hay</u> v.
<u>Cloutier</u>, 389 Mass. 248, 253 & n.7 (1983).  In that case, we addressed
the retroactive effect of new factors to be considered in connection
with aspects of G. L. c. 208, § 34, concerning the division of marital
property.

the Legislature intended by "subsequent modification." Such a reading not only would disregard the context in which the phrase appears in uncodified § 4 (a), but also would not take into account the remaining provisions of uncodified §§ 4, 5, and 6. By emphasizing the limitations on prospective application of the alimony reform act in three separate provisions in the uncodified sections of the act, the Legislature could not have expressed its intent more clearly: only a claim for modification based on durational limits may, but will not always, apply retroactively to existing alimony judgments.

This point is made evident by considering uncodified § 4 (a) in combination with uncodified § 4 (b). That section states that G. L. c. 208, §§ 48 to 55, which include the retirement and cohabitation provisions, "shall not be deemed a material change of circumstance that warrants modification of the amount of existing alimony judgments; provided, however, that existing alimony judgments that exceed the durational limits under [G. L. c. 208, § 49 (f),] shall be deemed a material change of circumstance that warrant modification." The Legislature's intent as expressed in § 4 (b) is unambiguous. Alimony judgments entered prior to the alimony reform act may be modified only under the existing material change of circumstances standard, with the single exception that the new

durational limits of the act[14] will be considered a material change of circumstances for purposes of this standard. It follows, therefore, that the provisions of G. L. c. 208, § 49 (d) and (f), do not warrant relief in the absence of a material change of circumstances.

(iii) <u>Termination "as otherwise provided for in this act."</u> Chin focuses particularly on the third clause of uncodified § 4 (a), which states that G. L. c. 208, § 49, "shall apply prospectively," except "as otherwise provided for in this act." He argues that the new provisions for termination of alimony in the cohabitation retirement provision fall within the meaning of the phrase "as otherwise provided for in this act."

We do not agree that uncodified § 4 (a) was intended to incorporate, as an exception to the alimony reform act's general rule of prospective application, all of the provisions in G. L. c. 208, § 49. Such a reading renders meaningless the specific exclusions from prospective application set forth in uncodified § 4 (b), and is inconsistent with principles of statutory construction under which we "give effect to all words of a statute, assuming none to be superfluous." <u>Commonwealth</u> v. <u>Semegen</u>, 72 Mass. App. Ct. 478,

---

[14] Chin does not dispute that the cohabitation and retirement provisions, set out in G. L. c. 208, § 49(d) and (f), respectively, are not durational limits, which are defined in G. L. c. 208, § 49 (b).

480 (2008).  Chin argues in essence that the provision should be read as follows:  General Laws c. 208, § 49, "shall apply prospectively, such that alimony judgments entered before March 1, 2012 shall terminate . . . as otherwise provided in [§ 49]."  This view requires that we read into the provision language that the Legislature did not include.  We will not "read into the statute a provision which the Legislature did not see fit to put there."  Commissioner of Correction v. Superior Court Dep't of the Trial Court for the County of Worcester, 446 Mass. 123, 126 (2006).

Moreover, the reading Chin proposes is inconsistent with the over-all scheme of the alimony reform act.  Where possible, we seek to harmonize the provisions of a statute with related provisions that are part of the same statutory scheme "so as to give full effect to the expressed intent of the Legislature."  Commonwealth v. Hampe, 419 Mass. 514, 518 (1995).  As stated, G. L. c. 208, § 37, governs alimony judgments entered prior to the act's effective date, under the material change in circumstances standard then in effect.

c.  Material change in circumstances.  In this case, the judge found that no other circumstances warranted a finding that there were changed circumstances that would require an adjustment to the amount of alimony Chin had been ordered to pay.  See Bush v. Bush, 402 Mass. 406, 412 n.9 (1988), quoting Gottsegen v. Gottsegen, 397 Mass. 617, 625 (1986) (rejecting claim that alimony should be modified "solely

on the basis of a finding of cohabitation").  See also <u>Pierce</u> v.

<u>Pierce</u>, 455 Mass. 286, 302 (2009) (rejecting claim that retirement

triggers termination of alimony obligation without showing of

material change in circumstances, because "no such provision was

included within the separation agreement").  A judge has

considerable discretion in fashioning an appropriate modification

judgment, and we will not disturb her judgment in the absence of an

abuse of discretion.  See <u>Pierce</u> v. <u>Pierce</u>, <u>supra</u> at 293; <u>Heistand</u>

v. <u>Heistand</u>, 384 Mass. 20, 26-27 (1981).  Nothing in the record

suggests that there was an abuse of discretion here.

<u>Judgment affirmed</u>.