Commonwealth v. Russo.

COMMONWEALTH vs. ROBERT A. RUSSO.

Middlesex. October 5, 1995. - November 9, 1995.

Present: LIACOS, C.J., WILKINS, LYNCH, GREANEY, & FRIED, JJ.

*Massachusetts Sentencing Commission. Practice, Criminal*, Sentence, Plea. *Statute*, Construction.

Statute 1993, c. 432, § 3 (*e*), does not authorize a judge to impose a sentence below the mandatory minimum sentence established by statute, in the absence of any guidelines having been established and enacted pursuant to § 5 of the statute for the offense in question. [322-324]

COMPLAINT received and sworn to in the Malden Division of the District Court Department on July 8, 1994.

Questions of law were reported to the Appeals Court by *Brian R. Merrick*, J. The Supreme Judicial Court granted a request for direct review.

*Terrence W. Kennedy* (*Elizabeth A. DiRusso* with him) for the defendant.

*Martin F. Murphy*, Assistant District Attorney, for the Commonwealth.

*Benjamin H. Keehn, John F. Palmer & James R. 'Pingeon*, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.

GREANEY, J. The defendant, Robert A. Russo, was charged in a complaint in the District Court with operating a motor vehicle after his driver's license had been suspended for operating a motor vehicle while under the influence of intoxicating liquor. G. L. c. 90, § 23 (1994 ed.). The defendant offered to a judge of the District Court sitting in a jury-of-six session, an admission to sufficient facts to warrant a finding of guilty. The admission was made pursuant to Rule 4 (c) of the Interim District Court Rules of Criminal Procedure (1994), which permits a defendant to withdraw a guilty

plea or admission if the sentencing judge rejects the disposition sought by the defendant.[1] In this case, defense counsel recommended a six-month sentence to a house of correction, suspended, with probation for one year. The prosecution argued that the judge was required to impose the sixty-day mandatory minimum sentence of incarceration prescribed by G. L. c. 90, § 23, second par., for someone like the defendant whose driver's license has been suspended because of a prior conviction for operating a motor vehicle while under the influence of intoxicating liquor. After considering a presentence report prepared by the probation office, the judge stated an inclination to impose the suspended sentence requested by the defendant. The judge, however, did "not believe that c. 432 of the Acts of 1993 operates to eliminate minimum mandatory sentences or [to make] them optional on findings of the judge." Section 3 (*e*) of c. 432 of St. 1993 (which is generically entitled "An Act to promote the effective management of the criminal justice system through truth-in sentencing," and which we shall refer to as the Act) contains provisions which may have an effect on mandatory minimum sentences. Based on the language in § 3 (*e*), and

---

[1] Rule 4 (c) reads as follows:

"(c) Guilty Plea or Admission. At the pretrial hearing the defendant may tender to the court a plea or admission conditioned on specific dispositional terms, with or without the agreement of the prosecutor. Such tender of plea or admission shall be set forth on the form promulgated therefor by the Chief Justice of the District Court. If the court rejects the dispositional terms agreed to by the parties, or requested by the defendant without the agreement of the prosecution, it shall so inform the defendant and the defendant shall be permitted to withdraw the plea or admission, in accordance with G. L. c. 278, § 18. Prior to submission to the court of a tender of plea or admission, the parties shall consult with the probation department if the proposed dispositional terms involve any probationary terms or conditions, so as to enable the probation department to be heard as may be required by the court at the time the court considers the tendered plea or admission.

"If the court rejects a tendered plea or admission, the judge may indicate to the parties what sentence he or she would impose, as provided in Mass.R.Crim.P. 12(c)(6), and a pretrial disposition may be requested on those terms."

acting pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1978), the judge reported the following two questions to the Appeals Court:

"1. Does c. 432 of the Acts of 1993, § 3 (e) allow a district court justice to impose a sentence other than the mandatory minimum prescribed by statute where the justice has found that there exists one or more mitigating circumstances that should result in a sentence below the applicable mandatory minimum term?

"2. If the answer to the first question is in the affirmative, does the justice have to wait until promulgation of the sentencing guidelines prior to exercising that discretion?"

We granted the defendant's application for direct appellate review. We answer the first and the second reported questions "Yes."

We begin by providing a summary of the contents of those sections of the Act which relate to the questions before us.[2]

---

[2]Other provisions of the Act make a number of specific changes in sentencing laws. For example, the Act made parole permits available only to those prisoners who had served the minimum term of their sentence, rather than to those who had served either one-third or two-thirds of their minimum terms, as had been the case under prior law. St. 1993, c. 432, § 11, amending G. L. c. 127, § 133. The Act also replaced G. L. c. 127, § 129, which had allowed prisoners to obtain early release as a result of so-called statutory good time. St. 1993, c. 432, § 10. The Act made a number of other changes, as well: it eliminated suspended and so-called split State prison sentences, St. 1993, c. 432, § 11, amending G. L. c. 127, § 133; eliminated so-called Framingham and Concord sentences, St. 1993, c. 432, §§ 14-15, 17-20, repealing G. L. c. 279, §§ 17-18, 28, and 31-33; and made the minimum State prison sentence one year, rather than two and one-half years, St. 1993, c. 432, § 16, amending G. L. c. 279, § 24. The provisions of the Act eliminating statutory good time, changing the law concerning parole eligibility, and eliminating Framingham and Concord reformatory sentences took effect on July 1, 1994. St. 1993, c. 432, § 21. The remaining provisions of the Act, including the provisions we are concerned with, took effect on April 12, 1994, ninety days after the Act was enacted.

Section 1 of the Act creates the Massachusetts Sentencing Commission (commission) as "an independent commission in the judicial branch of the commonwealth" and establishes its membership.[3] Section 2 of the Act sets forth the commission's mandate, providing, in part, that the "purpose[] of the Massachusetts sentencing commission shall be to recommend sentencing policies and practices for the commonwealth." These policies and practices are to effectuate different considerations spelled out in § 2, which seek to promote truth in sentencing through the formulation of uniform sentencing practices and the development of sentencing guidelines.

Section 3 of the Act, provides, that, to achieve the Act's goals, the commission is to "recommend sentencing guidelines" which "shall be used by the district and superior courts of the commonwealth and the Boston municipal court, in imposing a sentence in every criminal case." Viewed as a whole, § 3 describes the process to be followed by the commission in formulating and recommending guidelines pertaining to particular offenses, and taking into account an individual offender's "character, background, amenability to correction, and criminal history." St. 1993, c. 432, § 3 (*a*) (3). Subsection (*a*) (2) of § 3, states the general principle that a judge shall sentence an offender within the sentencing range established by a properly enacted guideline, unless the judge sets forth (in writing, on a form developed by the commission, see St. 1993, c. 432 § 3 [*h*]), reasons for an upward or downward departure based on mitigating or aggravating factors related to the characteristics of the offense or of the offender. Subsection (*a*) (3), among other things, charges the commission with delineating, with respect to every offense, a (nonexclusive) list of circumstances or factors on the basis of

---

[3] "The commission consists of fifteen members, including three judges, three prosecutors, and three defense counsel, along with representatives from the Executive Office of Public Safety, the Sheriffs' Association, the Department of Correction, the Parole Board, the Office of the Commissioner of Probation, and the Victim Witness Assistance Board." Massachusetts Sentencing Commission Interim Report to the Legislature at 1 (Sept. 1995).

which an upward or a downward departure would be warranted. See § 3 (*a*) (3) (D).

Subsection (*e*) of § 3, on which the defendant primarily relies,[4] expresses a restriction on the discretion of the commission in setting sentencing guidelines with respect to certain offenses. To the extent the Legislature has dictated a maximum sentence or a minimum mandatory sentence for a particular offense, the commission is required to accept, and retain, that expression of legislative intent in the sentencing range it proposes for that offense. Subsection (*e*) provides, however, that the general principle expressed in subsection (*a*) (2), authorizing a judge to depart from the established sentencing range in certain circumstances, applies even when the lower end of the guideline range has been established by reference to a minimum mandatory sentence enacted by the Legislature.

Section 4 of the Act spells out the circumstances in which either party (Commonwealth or defendant) who claims to be aggrieved by a sentence may take an appeal.

Section 5 of the Act directs the commission to submit the proposed sentencing guidelines to the Legislature within twelve months of the Act's effective date unless an extension

---

[4]Statute 1993, c. 432, § 3 (*e*), provides as follows:

"The maximum sentence within the range established by the sentencing guidelines for each offense shall not exceed the maximum penalty for the offense as set forth in the General Laws. The minimum sentence within said range shall not be below any mandatory minimum term prescribed by statute. However, except for the crimes set forth in section one of chapter two hundred and sixty-five of the General Laws [i.e., murder], the sentencing judge may depart from said range, and impose a sentence below any mandatory minimum term prescribed by statute, if the judge sets forth in writing reasons for departing from that range, on a sentencing statement as set forth in paragraph (h) of [this section], based on a finding that there exists one or more mitigating circumstances that should result in a sentence different from the one otherwise prescribed by the guidelines and below any applicable mandatory minimum term."

is granted[5] and § 5 specifically provides that "[t]he guide-lines shall take effect only if enacted into law."

We now turn to the first reported question. There is no doubt that § 3 (e) of the Act is intended, at some time, to empower judges with discretion to impose a sentence below a mandatory minimum sentence established by statute, al-though the scope of that discretion and the circumstances in which it may be exercised remain largely undefined. The de-fendant argues that the grant of that discretionary authority is now effective based on what he perceives to be the plain meaning of § 3 (e), considered in light of other provisions in the Act. The defendant points to the provisions in § 3 (d) (1)-(17) of the Act which furnish a list of circumstances which warrant upward or downward departures in sentences, and which are described as "non-exclusive" factors which the commission may determine are suitable for consideration by a judge for the purpose of determining a sentence. See St. 1993, c. 432, § 3 (a) (2). The defendant also points to provi-sions of the Act which indicate that it seeks, as one of its purposes, to "avoid[] unwarranted sentencing disparities . . . while maintaining judicial discretion and sufficient flexibility to permit individualized sentences warranted by mitigating or aggravating factors." St. 1993, c. 432, § 2 (4). Finally, the defendant refers to the provision of the Act which allows a defendant to seek appellate review of a sentence which is al-leged to be "plainly unreasonable" and which is not subject to a sentencing guideline. See St. 1993, c. 432, §§ 4 (a) (4), 4 (b) (4). These references to discretion, and to appellate re-view of sentences for which no guidelines exist, are seen by the defendant as indicating that § 3 (e) has immediate effect

---

[5]The commission published an "Interim Report to the Legislature" dated September, 1995. The report indicates that the commission was scheduled to submit the sentencing guidelines and other reports by April 11, 1995, but that "the sheer magnitude of the mandates to the commis-sion under [c.] 432, rendered it impossible for this deadline to be met." The commission sought legislation to amend the Act to extend the com-mission's reporting deadline to April 11, 1996. This legislation was pend-ing in the House of Representatives when the interim report was issued.

and applies to his case as one for which no guideline exists. Thus, the defendant urges, we should instruct the judge, in answer to the reported questions, that he has the authority to impose a suspended sentence in the absence of any guideline having been established for the defendant's offense.

The defendant's contention depends on a highly selective reading of the Act. Where the Act intends immediate changes in the law, it expresses those changes in language which is immediately effective. See note 2, *supra*. On the other hand, the Act's provisions governing the work of the commission, and particularly § 3, which describes the core function of the commission, speak entirely in prospective terms which clearly articulate a legislative intent that sentencing guidelines are not to become effective until the Legislature approves and adopts them. This is the obvious point made in § 5 of the Act, which serves to underscore language in earlier provisions directing the commission to conduct studies, gather and assimilate data, and make recommendations as a condition precedent to final legislative action.[6] This is also a conclusion dictated by common sense. It would be illogical to construe legislation as authorizing a judge to depart from a sentencing range suggested by a sentencing guideline when the guideline does not currently exist. Therefore, § 3 (e) of the Act is addressed to judges acting at some future time — a time after the commission recommends guidelines, and after those guidelines are accepted by the Legislature and enacted into law. We consider this reading of the Act as consistent with its plain and unambiguous language, see *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 537 (1992), the rule disfavoring the implied repeal or modification of statutes, see *Boston Hous. Auth.* v. *Labor Relations Comm'n*, 398 Mass. 715, 718

---

[6]In this respect, the commission's authority differs from its Federal counterpart, the United States Sentencing Commission. Guidelines initially promulgated by the United States Sentencing Commission took effect automatically without any requirement of action by Congress. See Comprehensive Crime Control Act of 1984, Pub. L. 98-473 § 235 (a)(1)(B)(ii), 98 Stat. 2031-3032; 28 U.S.C. § 994 (p) (1988).

(1986), and our obligation to construe legislation by reference to all its terms and conditions. See *McNeil* v. *Commissioner of Correction*, 417 Mass. 818, 821-822 (1994).

Accordingly, we answer both reported questions, "Yes."