NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11970


COMMONWEALTH  vs.  IMRAN LALTAPRASAD.



Suffolk.     April 5, 2016. - October 14, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.[1]




Massachusetts Sentencing Commission.  Practice, Criminal, Sentence, Judicial discretion.  Supreme Judicial Court, Superintendence of inferior courts.  Controlled Substances.




Civil action commenced in the Supreme Judicial Court for the county of Suffolk on August 20, 2015.

The case was reported by Cordy, J.


Thomas C. Maxim, Assistant District Attorney, for the Commonwealth.
Matthew R. Segal (Keith J. Nicholson, Adriana Lafaille, & Nancy Gertner with him) for the defendant.
Benjamin H. Keehn & Paul R. Rudof, Committee for Public Counsel Services, & Barbara J. Dougan, Michael B. Keating, Daniel N. Marx, & Daniel McFadden, for Committee for Public Counsel Services & others, amici curiae, submitted a brief.
Emma Quinn-Judge, Monica R. Shah, & Daniel K. Gelb, for The Constitution Project & others, amici curiae, submitted a brief.


---

[1] Justices Spina, Cordy, and Duffly participated in the deliberation on this case prior to their retirements.

BOTSFORD, J.  In this case we consider whether G. L. c. 211E, § 3 (e), authorizes a sentencing judge to depart from the mandatory minimum terms specified by statute for subsequent drug offenses.  We conclude that because the Legislature has not yet enacted into law sentencing guidelines recommended by the Massachusetts Sentencing Commission (commission), a sentencing judge currently may not impose a sentence that departs from the prescribed mandatory minimum term.  We do not reach in this case the constitutional claims that the defendant has raised for the first time in this court.[2]

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services; Families Against Mandatory Minimums; American Friends Service Committee, Arise for Social Justice; Black and Pink; Blackstonian; Brookline PAX; Center for Church and Prison, Inc.; Charles Hamilton Houston Institute for Race and Justice; Coalition for Effective Public Safety; Coalition for Social Justice; Community Resources for Justice; Criminal Justice Policy Coalition; Ex-Prisoners and Prisoners Organizing for Community Advancement; Families for Justice as Healing; Greater Boston Interfaith Organization; Greater Boston Legal Services; Jewish Alliance for Law and Social Action; Jobs Not Jails; Lawyers' Committee for Civil Rights and Economic Justice; Massachusetts Association of Criminal Defense Lawyers; Massachusetts Black Lawyers Association; Massachusetts Conference of the United Church of Christ; Massachusetts Institute for a New Commonwealth; Massachusetts Law Reform Institute; Massachusetts Organization for Addition Recovery; NAACP, New England Area Conference; National Association of Social Workers, Massachusetts Chapter; National Lawyers Guild; Massachusetts Chapter; New Start Project; Out Now; Partakers; Prison Policy Initiative; Prisoners' Legal Services of Massachusetts; Real Cost of Prisons Project; Social Workers for Peace and Justice; South Asian Bar Association of Greater Boston; Span; Trinity Chapel; Union of Minority Neighborhoods; and Universalist Unitarian Mass Action.  We also acknowledge the amicus brief submitted by the Constitution Project, Drug Policy Alliance, and National Association of Criminal Defense Lawyers.

Background.  In August, 2013, a Middlesex County grand jury indicted the defendant, Imran Laltaprasad, on a charge of possession with intent to distribute heroin, subsequent offense, G. L. c. 94C, § 32 (a), (b); and two charges of possession with intent to distribute cocaine, subsequent offense, G. L. c. 94C, § 32A (c), (d).  In July, 2015, a jury found the defendant guilty of possession with intent to distribute heroin, and one count of possession with intent to distribute cocaine; the defendant was found not guilty on the other count of that crime.[3] The defendant pleaded guilty to the subsequent offense portion of each of these charges.  See G. L. c. 94C, §§ 32 (b) (heroin), 32A (d) (cocaine).  Both counsel presented their sentencing recommendations,[4] and after hearing, the trial judge stated that

---

[3] The facts underlying the charges, in summary, are the following.  The defendant was arrested in 2013 by Somerville police officers who were conducting surveillance of the home of a resident in the city.  The defendant picked up the resident from her house, drove in a short loop, then let her out of the automobile in front of her house.  The police stopped the resident and found six small bags of cocaine on her person. Police then stopped and subsequently searched the defendant, finding $350 in cash and, inside the defendant's prosthetic leg, ten small bags of cocaine weighing an unknown amount (the police had mixed the cocaine found on the defendant with the cocaine recovered from the resident), and two small bags of heroin weighing a total of 0.81 grams.

[4] The Commonwealth recommended concurrent sentences of from three and one-half to five years on the two convictions; the defendant recommended that the judge depart downward from the statutory mandatory minimum, and if the judge were to determine that she had no discretion to depart, that she sentence the defendant to concurrent sentences of from three and one-half years to three and one-half years and one day.

she would depart downward from the mandatory minimum sentence provisions of the two subsequent offense statutes, each of which requires a minimum term of three and one-half years in State prison, and would impose instead a sentence of two and one-half years in a house of correction. In a written memorandum of decision, the trial judge explained her reasons:

> "(1) The defendant does not have a prior conviction for drug trafficking at seriousness levels 7 or 8; and

> "(2) The facts and circumstances surrounding this matter warrant a lesser sentence. Specifically, the defendant was arrested with less than 1 gram of the controlled substances. Further the defendant was severely injured when another individual shot a firearm at him. He suffered 11 gunshot wounds and endured 21 surgeries prior to trial. The defendant also lost his leg and sustained serious abdominal damage due to those injuries. Evidence of his current medical condition was presented at trial. Given both the relatively small amount of contraband involved in the arrest and the extreme medical condition of the defendant, the Court will depart downward and impose a sentence of 2.5 years in the House of Correction."

On July 30, 2015, the Commonwealth filed a motion to reconsider the sentences imposed, which the judge denied. The Commonwealth then filed in the county court a petition for relief pursuant to G. L. c. 211, § 3. In October, 2015, the single justice reserved and reported the case to the full court without decision.

Discussion. 1. Statutory authority. The sentencing provisions of three statutes are at issue in this case. The first two are the statutory drug crimes of which the defendant was convicted: possession of heroin with intent to distribute,

second or subsequent offense, G. L. c. 94C, § 32 (b); and possession of cocaine with intent to distribute, second or subsequent offense, G. L. c. 94C, § 32A (d).  Upon a defendant's conviction and regardless of the amount of heroin or cocaine involved, the Legislature has prescribed in each of these statutes a mandatory minimum period of incarceration, three and one-half years, to be served in State prison.[5]

The third statute, G. L. c. 211E, § 3 (e), is part of a chapter of the General Laws entitled "Massachusetts Sentencing

---

[5] General Laws c. 94C, § 32 (b), provides in relevant part:

"Any person convicted of violating this section after one or more prior convictions of manufacturing, distributing, dispensing or possessing with the intent to manufacture, distribute, or dispense . . . [heroin] shall be punished by a term of imprisonment in the state prison for not less than [three and one-half] nor more than fifteen years.  No sentence imposed under the provisions of this section shall be for less than a mandatory minimum term of imprisonment of [three and one-half] years and a fine of not less than two thousand and five hundred nor more than twenty-five thousand dollars may be imposed but not in lieu of the mandatory minimum [three and one-half] year term of imprisonment, as established herein."

General Laws c. 94C § 32A (d), provides in relevant part:

"Any person convicted of violating the provisions of subsection (c) [of G. L. c. 94C § 32A,] after one or more prior convictions of manufacturing, distributing, dispensing or possessing with the intent to manufacture, distribute, or dispense [cocaine] . . . shall be punished by a term of imprisonment in the state prison for not less than [three and one-half] nor more than fifteen years and a fine of not less than two thousand five hundred nor more than twenty-five thousand dollars may be imposed but not in lieu of the mandatory minimum term of imprisonment, as established herein."

Commission" that was added by the Legislature in 1996. See St. 1996, c. 12, § 9 (1996 act). Section 3 of c. 211E focuses specifically on the responsibility of the commission to recommend sentencing guidelines for use in the District Court, the Boston Municipal Court, and the Superior Court. See St. 1993, c. 432, § 1 (a). Although the sentence ranges to be set by the guidelines are to be presumptive in most circumstances, § 3 (e) provides:

> "Except for the crimes set forth in [G. L. c. 265, § 1, (murder)], the sentencing judge may depart from the range established by the sentencing guidelines and impose a sentence below any mandatory minimum term prescribed by statute if the judge sets forth in writing reasons for departing from that range on a sentencing statement . . . based on a finding that there exists one or more mitigating circumstances that should result in a sentence different from the one otherwise prescribed by the guidelines and below any applicable mandatory minimum term."

The trial judge did not expressly reference G. L. c. 211E, § 3 (e), in sentencing the defendant or in her sentencing memorandum, but the record indicates that in departing from the mandatory minimum sentencing provisions, she relied on § 3 (e) for authority to do so. The Commonwealth argues that the judge lacked authority to reach this result because the mandatory minimum sentence departure authorization in § 3 (e) only becomes operative when the commission's recommended sentencing guidelines are "enacted into law" by legislative vote, as

mandated by c. 211E, § 3 (a) (1),[6] and the Legislature has not done so to date. The defendant argues, however, that the plain language of § 3 (e) authorizes judges to depart from mandatory minimum sentences independently of the enactment of any sentencing guidelines and, even if § 3 (e)'s language and meaning were not so clear, applicable principles of statutory interpretation compel a construction that allows judges to depart downward from mandatory minimum sentences. For the reasons that follow, we are constrained to agree with the Commonwealth.

a. History of G. L. c. 211E, § 3. Chapter 211E has its origins in earlier legislation, specifically, St. 1993, c. 432 (1993 act). The 1993 act created the commission as an independent commission within the judicial branch for the purpose of "recommend[ing] sentencing policies and practices for the commonwealth," St. 1993, c. 432, § 2, including, in particular, recommended sentencing guidelines to be used by trial courts in every criminal case. Id. at § 3 (a) (1), (2). The guidelines were to establish a target sentence for each offense within a range to be set by the commission with a

---

[6] Section 3 (a) (1) of G. L. c. 211E provides:

"The commission, by affirmative vote of at least six members of the commission and consistent with all pertinent provisions of this chapter and existing law, shall recommend sentencing guidelines, which shall take effect only if enacted into law" (emphasis added).

maximum range not greater than the maximum penalty established by statute for the offense, and a minimum no less than two-thirds of the maximum, and not "below any mandatory minimum term prescribed by statute."  See id. at § 3 (a) (3) (C), (e). However, with the exception of murder, a judge in imposing a sentence would be entitled to "impose a sentence below any mandatory minimum term prescribed by statute," provided the judge set forth the reasons in a sentencing memorandum.  Id. at § 3 (e).[7]  Section 5 of the 1993 act directed the commission to submit to the Legislature "initial sentencing guidelines" within twelve months of the act's effective date, and further stated that "[t]he guidelines shall take effect only if enacted into law."[8]  St. 1993, c. 432, § 5.

---

[7] Section 3 (e) of St. 1993, c. 432 (1993 act), provides in relevant part:

"The maximum sentence within the range established by the sentencing guidelines for each offense shall not exceed the maximum penalty for the offense as set forth in the General Laws.  The minimum sentence within said range shall not be below any mandatory minimum term prescribed by statute. However, except for the crimes set forth in [G. L. c. 265, § 1, (murder)] the sentencing judge may depart from said range, and impose a sentence below any mandatory minimum term prescribed by statute, if the judge sets forth in writing reasons for departing from that range, on a sentencing statement . . . based on a finding that there exists one or more mitigating circumstances that should result in a sentence different from the one otherwise prescribed by the guidelines and below any applicable mandatory minimum term."

[8] In September, 1995, the commission sought an extension of its deadline to April, 1996.  See Commonwealth v. Russo, 421

In November, 1995, this court decided Commonwealth v. Russo, 421 Mass. 317 (1995), a case that answered two questions reported by a District Court judge concerning § 3 of the 1993 act:  (1) whether § 3 (e) allowed a sentencing judge to impose a sentence that departed from a statutorily prescribed mandatory minimum sentence if the judge were to find one or more mitigating circumstances warranted the departure; and (2) if so, whether the authority of a judge to so depart became operative only on the promulgation of sentencing guidelines.  Id. at 319. The court answered that § 3 (e) was clearly intended, "at some time, to empower judges with discretion to impose a sentence below a mandatory minimum sentence established by statute."  Id. at 322.  However, based on the "plain and unambiguous language," id. at 323, of the statute, "§ 3 (e) of the [1993 act] is addressed to judges acting at some future time -- a time after the commission recommends guidelines, and after those guidelines are accepted by the Legislature and enacted into law."  Id.

Mass. 317, 322 n.5 (1995).  On April 10, 1996, the commission submitted recommended sentencing guidelines.  Massachusetts Sentencing Commission, Report to the General Court (1996) http://www.mass.gov/courts/docs/admin/sentcomm/ sentencing-comm-report-to-the-general-court-96.pdf [https://perma.cc/R8XL-DFA4].  The suggested guidelines in the report were incorporated into proposed sentencing guidelines legislation, which is still pending before the Legislature. Massachusetts Sentencing Guidelines, Sentencing Guide (Feb. 1998), http://www.mass.gov/courts/docs/admin/sentcomm/guide.pdf [https://perma.cc/FX59-JKPX].

The Legislature passed St. 1996, c. 12 (1996 act), a few months after Russo was decided. The 1996 act repealed the sections of the 1993 act that pertained to the commission, see St. 1996, c. 12, § 16, and effectively replaced those provisions with G. L. c. 211E, inserted into the General Laws by § 9 of the 1996 act. Most, but not all, sections of c. 211E are identical, in substance and frequently in language, to the repealed sentencing commission provisions of the 1993 act. Compare G. L. c. 211E, §§ 1-3, as enacted by St. 1996, c. 12, § 9, with St. 1993, c. 432, §§ 1-5.[9] Of particular relevance here is the comparison between c. 211E, § 3 (a) (1), and St. 1993, c. 432, §§ 3 (e) and 5. Both c. 211E, § 3 (e), and § 3 (e) of the 1993 act, using the same language, authorize a sentencing judge to depart from a statutorily prescribed mandatory minimum sentence on any charge except murder, based on the judge's written "finding that there exists one or more mitigating circumstances that should result in a sentence different from the one otherwise prescribed by the guidelines and below any applicable

_____

[9] Thus, G. L. c. 211E, § 1, establishes the Massachusetts Sentencing Commission (commission) and outlines its powers and duties -- compare St. 1993, c. 432, § 1; c. 211E, § 2, defines the purposes the commission is intended to fulfill -- compare St. 1993, c. 432, § 2; c. 211E, § 3, describes the sentencing guidelines to be prepared and recommended by the commission, and also how the guidelines are to function once in effect -- compare St. 1993, c. 432, § 3; and c. 211E, § 4, preserves a defendant's and the Commonwealth's right to appeal a sentence in certain circumstances -- compare St. 1993, c. 432, § 4.

mandatory minimum term."  And both provide that the commission's recommended sentencing guidelines "shall take effect only if enacted into law."  See G. L. c. 211E, § 3 (a) (1); St. 1993, c. 432, § 5.[10]

The salient difference between the provisions relating to the commission in the 1993 act and in G. L. c. 211E is that the 1993 act expressly prohibited the commission from proposing guidelines that contained recommended minimum sentence ranges below any mandatory minimum sentence imposed by statute, see St. 1993, c. 432, § 3 (e), whereas c. 211E, § 3 (c), lifted this bar and specifically authorized the commission to recommend guidelines that departed from mandatory minimum or maximum sentence terms set by the Legislature.  After the 1996 act was passed by both legislative branches, the then Governor, William F. Weld, vetoed or disapproved certain sections that related to the sentencing guidelines.  He indicated that his veto was based on his belief that the commission should not be empowered to recommend sentencing guidelines that ignored the legislatively set mandatory minimum terms.  See Letter from the Governor to

---

[10] Further, G. L. c. 211E and the 1993 act both provide that following the effective date of any sentencing guidelines enacted by the Legislature, any amendments to the guidelines are only to take effect "if enacted into law."  See G. L. c. 211E, § 3 (g); St. 1993, c. 432, § 3 (g).

the Legislature, 1996 House Doc. No. 5843, at 1-2.[11]  The
Legislature voted to override the Governor's veto, and therefore
St. 1996, c. 12, § 9, in its entirety became law as G. L.
c. 211E.

b.  Authority to depart from mandatory minimum sentence
terms.  The Russo case addressed whether the 1993 act permitted
a judge to deviate from a mandatory minimum sentence term before
the Legislature enacted sentencing guidelines recommended by the
commission; we concluded that judicial deviation was not
authorized.  Russo, 421 Mass. at 319.  In effect, the present
case raises the same question in relation to the 1996 act, and
G. L. c. 211E, § 3 (e), in particular.  The Commonwealth argues
that given the nearly identical language in the 1993 act and
c. 211E, § 3 (e), Russo controls and requires the same answer.
The defendant disagrees, arguing that Russo considered a
different statute, one that was uncodified, and considered it at
a time before the commission had recommended any sentencing
guidelines.

---

[11] In his letter explaining his partial vetoes, the then
Governor, William F. Weld, explained his disapproval of the
provision in the 1996 act empowering the commission to disregard
mandatory minimum sentences, but he did not indicate any
disagreement with the provision in G. L. c. 211E, § 3 (e),
authorizing judges to depart from mandatory minimum sentence
terms.  In fact, the Governor had approved and signed the 1993
act, which included the same provision authorizing judicial
departures from mandatory minimum sentences.

It is true that Russo considered an uncodified act, and we consider in this case a statute that is codified.  However, "[t]he same standards of construction are applicable to both codified and uncodified provisions of the General Laws."  Chin v. Merriot, 470 Mass. 527, 532 (2015).[12]  There does not appear to be any meaningful distinction between the 1993 act and G. L. c. 211E based on the different codification status of the two enactments.

Apart from the codification issue, however, the defendant is correct that Russo does not directly control our inquiry in this case because the provisions of G. L. c. 211E that we consider here are part of a different statute from the one considered in Russo.  That being said, there is no dispute that the substantive language of G. L. c. 211E, § 3 (a) (1) and (e), is the same as §§ 3 (e) and 5 of the 1993 act and these were the specific provisions that served as the basis for the court's decision in Russo.  See Russo, 421 Mass. at 323.  Given that the Legislature enacted the 1996 act, including c. 211E, § 3 (a) (1)

_____

[12] The defendant cites Chin v. Merriot, 470 Mass. 527, 532 (2015), and specifically the statement in Chin that "[a]s a general matter, uncodified provisions of an act . . . are not the source of the substantive provisions of the law."  However, it is clear from the context of the quoted language in Chin that the court was specifically referring to those uncodified provisions that serve to provide direction about an act's operation, such as when some or all of the provisions in the legislation will take effect; we did not intend to suggest in Chin that uncodified provisions cannot or by definition do not serve as a source of substantive law.

and § 3 (e), soon after Russo was decided, it is appropriate to infer that the Legislature intended the relevant provisions of the 1996 act to have the same meaning as Russo had opined that they had in the 1993 act. See, e.g., Commonwealth v. Colturi, 448 Mass. 809, 812 (2007).[13]

The Russo case, however, is not the sole source of guidance on which we rely in interpreting the pertinent provisions of G. L. c. 211E. We also look to the language of c. 211E, § 3 (e), examined "in the context of the entire statute." Chin, 470 Mass. at 532. See Commonwealth v. Doe, 473 Mass. 76, 80 (2015). When read in conjunction with c. 211E as a whole, it is clear that the grant of authority to a judge under § 3 (e) to sentence below a statutory mandatory minimum is tied to the guidelines and does not operate as an independent grant of judicial departure authority. First, G. L. c. 211E, § 3 (e), itself explicitly references the sentencing guidelines in conferring authorization to depart from mandatory minimum

_____

[13] The defendant suggests that in contrast to Russo, here the commission has promulgated and proposed guidelines to the Legislature, so the guidelines should be deemed "in effect" for purposes of our analysis. This argument fails. If one accepts, as the defendant does and we as well, that the Legislature intended that the commission's recommended guidelines would not be operative until enacted into law, it is illogical to conclude that the Legislature intended G. L. c. 211E, § 3 (e), which is tied to the guidelines, to be effective as soon as the commission filed its proposed guidelines with the Legislature, regardless of whether the guidelines would ever get enacted and become operative. We avoid construing a statute in a manner that leads to an absurd result. See, e.g., Attorney Gen. v. School Comm. of Essex, 387 Mass. 326, 336 (1982).

sentence provisions:  "the sentencing judge may depart from the range established by the sentencing guidelines and impose a sentence below any mandatory minimum term prescribed by statute" (emphasis added).  The section then states that such departure is permitted if the judge provides reasons for "departing from that range" based on "one or more mitigating circumstances." Id.  Reading this language in conjunction with other provisions in c. 211E, it is clear that the "mitigating circumstances" are those that the sentencing commission is charged with establishing pursuant to c. 211E, § 3 (a) (2) and (d), in order "to guide the sentencing judge."  G. L. c. 211E, § 3 (a) (2). Further, c. 211E, § 3 (e), references a judge's duty to "set[] forth in writing reasons for departing from the range on a sentencing statement as set forth in paragraph (h)" (emphasis added).  The term "paragraph (h)" is a reference to c. 211E, § 3 (h), which charges the Chief Justice of the Trial Court, "in consultation with the sentencing commission," with the duty to promulgate "the form of a sentencing statement, conforming to the sentencing guidelines, which shall be used by the sentencing judge in the application of the guidelines when imposing a sentence."  As these examples show, the close interconnection between the judicial departure authorization in § 3 (e) and the sentencing guidelines is obvious.

In sum, we are persuaded that G. L. c. 211E, § 3 (e), is appropriately construed to mean that the authority to depart from mandatory minimum sentences set by statute was not intended to operate independently of sentencing guidelines recommended by the commission, and the guidelines themselves must be enacted by the Legislature before they take effect. As we concluded about the 1993 act, see Russo, 421 Mass. at 323, this result is consistent with the plain meaning of the language of c. 211E, § 3 (e), and reinforced when the section is considered within the context of c. 211E as a whole.[14,15]

We add a final point. Although G. L. c. 211E, § 3 (e), does not permit a judge to impose a sentence below any prescribed mandatory minimum term in the absence of legislatively endorsed sentencing guidelines, it is clear that at the time § 3 (e) was enacted in 1996, both the Legislature and the Governor supported a policy of authorizing a sentencing

[14] We have examined the legislative history of the 1996 act, and found nothing in it that supports the defendant's interpretation that the 1996 act was intended to provide judges the authority to depart from mandatory minimum sentences independently of the Legislature's enactment of sentencing guidelines.

[15] Because we conclude that the meaning of G. L. c. 211E, § 3 (e), is clear, we do not reach the defendant's alternative argument that the statute is ambiguous and therefore should be interpreted to avoid a reading that raises substantial constitutional concerns -- a result that he claims arises if § 3 (e) is not read to include a judicial "safety valve," i.e., authorization for a judge to impose a sentence that departs from a mandatory minimum term set by statute.

judge, in certain circumstances, to depart from statutes imposing mandatory minimum sentences, so long as the judge provides a written statement of reasons for the departure.  See note 11, supra, & accompanying text.  Amici point out that in the twenty years since c. 211E, § 3 (e), was enacted, the Federal government[16] and at least twenty-three States[17] have enacted "safety valve" statutes authorizing judges to depart from mandatory minimum sentences in certain circumstances at least for drug offenses, and in some instances, more generally. The efficacy, or lack of efficacy, of mandatory minimum sentences, particularly in drug crimes, is the subject of substantial public debate.  But apart from the question of efficacy in terms of the purposes to be served by criminal sentences, data concerning convictions for drug offenses in

---

[16] See 18 U.S.C. § 3553(f) (2006 & Supp. IV).

[17] Amici cite the following State statutes:  Ala. Code § 15-18-8(a) (2016); Conn. Gen. Stat. § 21a-283a (2016); Del. Code Ann. tit. 11, § 4221 (2016); Fla. Stat. § 775.084(3)(a)(6), 3(c)(5), 4(e) (2012); Ga. Code Ann. §§ 16-13-31(2), 16-13-31.1 (2015); Haw. Rev. Stat. § 706-622.5 (2015); Ind. Code § 35-50-2-2.1(b) (2016); Me. Rev. Stat. Ann. tit. 17-A, § 1252(5-A)(B) (2015); Md. Code Ann. Crim. Law § 5-609.1 (2016); Mich. Comp. Laws §§ 333.7410(5), 333.7413(4) (2016); Minn. Stat. § 152.025 (2010); Miss. Code Ann. § 41-29-139(h) (2014); Mo. Rev. Stat. § 558.046 (2016); Mont. Code Ann. § 45-9-202 (2015); N.J. Stat. Ann. § 2C:35-7 (2010); N.M. Stat. Ann. § 31-18-17(A) (2016); N.Y. Penal Law § 70.70(2)(c) (2011); N.D. Cent. Code § 12.1-32-02.3 (2015); Okla. Stat. tit. 22, § 985.1 (2016); S.C. Code Ann. §§ 44-53-370, 44-53-375 (2015); S.D. Codified Laws § 22-42-2.3, 22-42-19 (2016); Va. Code Ann. § 18.2-248 (2014).  See also State v. Dycus, 456 S.W.3d 918, 925 (Tenn. 2015).

Massachusetts raise a serious concern about the disparate impact of mandatory minimum sentences on defendants who are part of racial or ethnic minority groups.[18]

We recognize that "[i]t is the province of the Legislature to define crimes and set penalties in the first instance." Commonwealth v. Brown, 466 Mass. 676, 684-685 (2013), S.C., 474 Mass. 576 (2016), and cases cited. However, twenty years have passed since G. L. c. 211E, § 3 (e), was enacted. It may be appropriate for the Legislature to consider anew, guided by the work of the commission, the issue of authorizing sentencing judges to depart from mandatory minimum sentences in relation to certain types of drug offenses in appropriate circumstances.

2. Constitutionality of statutory mandatory minimum sentences for subsequent drug offenses. The defendant argues that even if G. L. c. 211E, § 3 (e), did not permit the judge to impose a sentence below the otherwise applicable mandatory minimum sentences associated with his convictions, the sentence

_____

[18] The Survey of Sentencing Practices, FY 2013, published by the commission in 2014 (the most recent fiscal year reflected in published data) indicates the following: 55.3 per cent of defendants convicted of all drug offenses in Massachusetts were white, and 43.7 per cent were racial or ethnic minorities; of drug distribution offenses with nonminimum mandatory sentences, 44.1 per cent of defendants convicted were white, and 55.0 per cent were racial or ethnic minorities; of distribution offenses with mandatory minimum sentences, 25.3 per cent of the defendants convicted were white, and 74.7 per cent were racial or ethnic minorities. Massachusetts Sentencing Commission, Survey of Sentencing Practices, FY 2013 (Dec. 2014), http:// www.mass.gov/courts/docs/admin/sentcomm/fy2013-survey-sentencing-practices.pdf [https://perma.cc/SH4C-U3GK].

she imposed should be affirmed because the subsequent offense provisions at issue here, G. L. c. 94C, § 32 (b), and § 32A (d), are unconstitutional -- "in every case" and as applied to him. Specifically, he claims that mandatory minimum sentences for subsequent drug offenses are unconstitutional because they (1) inflict disproportionate punishment against people of color, evidencing a discriminatory purpose in violation of equal protection guaranteed by art. 1 of the Massachusetts Declaration of Rights; (2) severely punish drug addicted defendants who sell small amounts of drugs, constituting cruel or unusual punishment in violation of art. 26 of the Declaration of Rights; and (3) strip the judiciary of its inherent powers to sentence in violation of art. 30 of the Declaration of Rights. Specifically as applied to him, the defendant argues that the mandatory minimum sentence of three and one-half years violates his right to equal protection as a person of color, and his right to protection from cruel or unusual punishment in light of his compromised physical state and the small amount of drugs found on him.[19]

The defendant did not raise any constitutional challenge to the subsequent offense provisions in the Superior Court, either

---

[19] In support of his equal protection challenge, the defendant presents the statistical evidence included in the report of the commission concerning sentencing practices in fiscal year 2013. See note 18, supra.

at the time of sentencing or before.  Although we may reach

constitutional issues raised for the first time on appeal, this

is not an appropriate case to do so, because the record is

inadequate to consider the defendant's claims.[20]  See Gagnon,

petitioner, 416 Mass. 775, 780 (1994).  See also Commonwealth v.

Guzman, 469 Mass. 492, 500-501 (2014).

Conclusion.  The defendant's sentences must be vacated

because they are not in accord with the statutes defining the

---

[20] Although the statistical data on which the defendant
relies for his equal protection claim are certainly troubling,
the data alone likely would not suffice to support the claim.
See United States v. Irizarry, 322 Fed. Appx. 153, 155 (3d Cir.
2009); United States v. Lewis, 40 F.3d 1325, 1344-1345 (1st Cir.
1994); United States v. Frazier, 981 F.2d 92, 95 (3d Cir. 1992),
cert. denied, 507, U.S. 1010 (1993).  In support of the claim
that mandatory minimum sentences without a safety valve may
inflict cruel or unusual punishment on subsequent drug
offenders, the defendant points to the growing public consensus
that substance use disorder is a disease whose sufferers require
treatment, not imprisonment.  In light of this public
recognition about substance use disorder, the defendant avers
that without a safety valve, there is great risk of imposing
sentences that are disproportionate to the crime committed by
drug offenders, citing Cepulonis v. Commonwealth, 384 Mass. 495,
497 (1981).  Again, this claim lacks evidentiary support in the
particular record before us.  Similarly, the defendant's third
constitutional challenge -- that statutory mandatory minimum
sentences violate separation of powers principles -- also fails
based on the present record.

Finally, the record does not establish that the imposition
of a three and one-half year sentence in State prison violates
the defendant's equal protection rights or results in a severe
and disproportionate punishment.  See Commonwealth v. King, 374
Mass. 5, 18 (1977) ("any inference of [discrimination] as
applied . . . can rest only on conjecture").  The defendant's
criminal record, before the sentencing judge in connection with
the Commonwealth's motion to reconsider the sentence, clearly
qualifies the defendant as a subsequent offender.

offenses of which the defendant was convicted.  The Commonwealth's petition for relief under G. L. c. 211, § 3, is allowed, and the case is remanded to the Superior Court for resentencing and further proceedings consistent with this opinion.

So ordered.